## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JONATHAN MANLOVE,<br>Individually, and on behalf of others<br>similarly situated | |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| VOLKSWAGEN AKTIENGESELLSCHAFT,<br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br>and VOLKSWAGEN CHATTANOOGA<br>OPERATIONS, LLC<br>Defendants. | No. _____ |

## COLLECTIVE COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Jonathan Manlove ( "Plaintiff" or "Mr. Manlove") brings this action in his individual capacity and on behalf of a class of employees 50 years of age and above defined below (the "Class") that work for Volkswagen Aktiengesellschaft ("Volkswagen AG"), including its wholly-owned subsidiaries Volkswagen Group of America, Inc. ("Volkswagen Group of America") and Volkswagen Group of America Chattanooga Operations, LLC ("Volkswagen Chattanooga") (collectively "Volkswagen" or "the Company") in the United States to seek injunctive relief against Volkswagen's company-wide policy of age discrimination.

## INTRODUCTION

1.      This is an action under the Age Discrimination in Employment Act and Tennessee Human Rights Act to correct unlawful employment practices on the basis of age, and provide appropriate relief to Plaintiff and a class of current employees who have been adversely affected by these unlawful employment practices.

2. Volkswagen AG announced to the world that it was implementing a new personnel policy to force older workers out of the Company through coercive early retirement or "natural fluctuations." A few months later, Volkswagen AG transferred their Senior Director of Human Resources to the Chattanooga, Tennessee manufacturing facility to begin the process of purging older workers through "natural fluctuation." One month later, Plaintiff's boss, a man in his 60s, left the Company without warning, and was replaced by a new Manager in her 30s.

3. Three months after Volkswagen AG's Human Resources officer came to Chattanooga, Plaintiff Jonathan Manlove received news from Human Resources that he was being demoted. He was transferred to a new position in Volkswagen, with corresponding cuts in compensation and benefits to take effect if he did not find a new position in the Company within a year.

4. The one-year mark on Plaintiff's demotion and transfer expires imminently, at which time the Company will take further adverse action against him. Volkswagen's actions—publicly directed by German parent company Volkswagen AG—indisputably violate the Age Discrimination in Employment Act and Tennessee Human Rights Act. Volkswagen must be enjoined from continuing to discriminate against Plaintiff, and other vulnerable workers, while employees adjudicate additional relief in their respective appropriate forum.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 because the action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, which incorporates by reference Sections 16 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 216. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Tennessee, Southern Division.

7.      This Court has jurisdiction over Defendant Volkswagen of Chattanooga because it is a limited liability company formed in the State of Tennessee.

8.      This Court has jurisdiction over Defendants Volkswagen AG and Volkswagen Group of America under T. C. A. § 20-2-223 because Defendants transact a significant amount of business in the State. Defendants took adverse action, and directed its agents to take adverse action, against Plaintiff in the State of Tennessee. Defendants have purposefully availed themselves of the law in this State through hundreds-of-millions of dollars in federal, state, and local tax incentives. Defendant Volkswagen AG operates Volkswagen Group of America and Volkswagen Group of America Chattanooga, its wholly-owned subsidiaries, with a unity of interest and ownership such that they are a mere instrumentality of its parent, including through the following actions:

a.   All Defendants engage in the same business enterprise;

b.   Volkswagen AG maintains the Volkswagen North American Region, which operates under the Volkswagen AG board structure and is responsible for aligning all regional activities of Volkswagen AG throughout Canada, Mexico, and the United States, including, among others, human resources, communication, IT, sales, marking, and product development;

c.   Volkswagen AG and Volkswagen Group of America share common board members, including Hinrich J. Woebcken, CEO of Volkswagen AG North America Region and President and CEO of Volkswagen Group of America, and Pietro Zollino, Chief Communications Officer for Volkswagen AG North American

Region and Executive Vice President of Communications for Volkswagen Group of America;

d. Volkswagen AG shares common employees with Volkswagen of Chattanooga, including through the former Chairman and CEO of Volkswagen of Chattanooga, Frank Fischer, who, based on public research, has been employed by Volkswagen AG since approximately 1991, served as a production manager in AG's German plant for years, served as AG's Head of Construction and Management for a holding company of Volkswagen Group of America, served as the Chairman and CEO of the Chattanooga facility until 2014 at which time he became the Plant Manager of Volkswagen AG's Emden Plant;

e. Volkswagen AG maintains a common internal human resources management system known as SAP across Volkswagen AG, Volkswagen Group of America, and Volkswagen Chattanooga; Defendants maintain a unified set of human resource, performance evaluation, and compensation policies;

f. Volkswagen AG exerts control over the daily affairs of Volkswagen of Chattanooga, including the labor activities and personnel decisions of its subsidiary employees, through: daily production plans directing Chattanooga worker activities and labor productivity set by and sent by German management; requiring weekly reports sent from Chattanooga to Germany so that AG employees can set worker activity and labor production; regular meetings held by Volkswagen AG employees in Chattanooga to set directly personnel work actives and production; directing operating hours of the Chattanooga facility, including plant shut-downs; maintaining a common international standards organization implemented in

Chattanooga through regular audits conducted by AG employees; directing the method of promotions for workers in Chattanooga, including through the elimination of the management assessment centers; maintaining a common internal employee platform through which open positions and job transfers are conducted;

g. Volkswagen AG directly implemented a common scheme of personnel policy, including in Chattanooga, as exemplified by the installation of Volkswagen AG Senior Director of Human Resources as Volkswagen of Chattanooga's Senior Vice President of Human Resources;

h. Volkswagen AG considers its subsidiaries, including Volkswagen Group of America and Volkswagen of Chattanooga, to fall under the umbrella of the "Volkswagen Group," including through: maintaining a set of financial records for the entire "Volkswagen Group" that includes production, sales, revenues, earnings, and employees from Volkswagen AG, Volkswagen Group of America, and Volkswagen Chattanooga; maintaining a common set of "Personnel Indicators" for the entire Volkswagen Group that includes a reported 58,491 employees in The Americas;

i. Volkswagen Group of America dictates the salary and bonus of all Chattanooga workers, including Plaintiff; dictates the terms of Chattanooga employee contracts, including with Plaintiff at the start of his employment with Volkswagen; and operates as an employer of Chattanooga employees, including through common personnel and policy communications from Executive Vice President of Human Resources Mike Beamish.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 626

because Defendants transact a substantial portion of their business in this District, maintain an office and manufacturing facility in this District, and operate as direct employers of more than 3,000 employees in this District.

10.     Additionally, a substantial part of the events or omissions giving rise to the claims in this action occurred in the Eastern District of Virginia.

## PARTIES

11.     Plaintiff Jonathan Manlove is a resident of Ooltewah, Hamilton County, Tennessee.  At the time the events complained herein commenced, he was fifty-three (53) years old. At all relevant times, Manlove has been an "employee" of Volkswagen as defined by the relevant state and federal statutes. Plaintiff Manlove timely filed administrative charges seeking individual and class relief with the EEOC on April 25, 2018.

12.     Defendant Volkswagen Aktiengesellschaft ("Volkswagen AG") is a German corporation with its principle place of business at Berliner Ring 2, 38440 Wolfsburg, Germany. Volkswagen AG is one of the world's leading manufacturers of automobiles and commercial vehicles and the largest carmaker in Europe. Volkswagen operates 122 production plants throughout the world, including its wholly-owned production plant in Chattanooga, Tennessee. At all relevant times, Volkswagen AG acted as Plaintiff's employer as defined by the ADEA and THRA.

13.     Defendant, Volkswagen Group of America, Inc. ("Volkswagen Group of America"), incorporated in New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171, is a wholly owned subsidiary of Volkswagen AG. Volkswagen Group of America's Herndon office is the operational headquarters for

Volkswagen's presence in North America. At all relevant times, Volkswagen Group of America acted as Plaintiff's employer as defined by the ADEA and THRA.

14.     Defendant, Volkswagen Group of America Chattanooga Operations, LLC ("Volkswagen Chattanooga"), is a limited liability company formed in Tennessee, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171, according to business records filed in the State of Tennessee. Defendant is a wholly owned subsidiary of Volkswagen Group of America and operates the Volkswagen Chattanooga Assembly Plant in Chattanooga, Tennessee. At all relevant times, Volkswagen Chattanooga acted as Plaintiff's employer as defined by the ADEA and THRA.

## FACTUAL ALLEGATIONS

15.     As part of a rebranding effort following Volkswagen's global emissions scandal, Volkswagen AG Brand Chief, Dr. Herbert Diess, announced a new re-branding effort designed to shed Volkswagen's old diesel image and replace it with the image of a modern, young company focused on productivity, efficiency, and technology. As part of this, Volkswagen implemented a global policy consisting in part of eliminating older workers from the Company's ranks. Plaintiff was a direct victim of this discriminatory policy.

### A. Volkswagen's Global Emissions Fraud and Company Restructuring

16.     "In my German words: we have totally screwed up." The announcement of Michael Horn, former CEO and President of Volkswagen Group of America on September 21, 2015 perfectly captured the dramatic set of events leading to Volkswagen's emissions scandal.[1]

17.     September 2015 launched a shocking investigation into Volkswagen AG's global fraud as the world learned over the coming year how high-ranking executives approved diesel

---

[1] *CNBC*, "Volkswagen's US boss: 'We screwed up'" (September 21, 2015), *available at* https://www.cnbc.com/2015/09/21/volkswagen-us-ceo-screwed-up-on-eca-emissions-diesel-test-rigging.html

engine "defeat devices" to cheat on U.S. emissions tests. Despite clear warnings from its Audi-brand engineers that defeat devices should "absolutely not be used"[2] in the United States, Volkswagen AG willfully flouted American law and commenced its scheme.

18.    This pattern and practice of fraudulent behavior continued for years. As Volkswagen AG engineered new defeat devices, Volkswagen employees raised concerns with legality in America, which Volkswagen AG management ignored, over time developing more precise methods to cheat emissions tests covertly. The Company continued to make false representations to U.S. regulators and customers about the legality of their vehicles, devising seemingly benign pretextual excuses to explain discrepancies in the data.

19.    Volkswagen AG's fraudulent misconduct and cover-up was indisputably directed from the top of the organization, despite earlier denials. Four days after the Environmental Protection Agency's public notice of violation, former Volkswagen CEO Martin Winterkorn issued a statement asserting "it would be false, if because of the terrible mistakes of a few, the hard and honest work of [Volkswagen] is put under a general mistrust." Yet, as investigation into the scheme commenced, Volkswagen AG in-house counsel orchestrated the destruction of documents and files related to the U.S. emissions issues, and a general mistrust turned into admissions of guilt and a $15 billion settlement.

### B.  Volkswagen Strategically Rebrands as "Out with the Old"

20.    Reeling from an explosive global scandal now known as "Dieselgate," Volkswagen faced a pivotal moment, one of "the biggest in Volkswagen's history."[3] Following the U.S.

---

[2] *United States of America v. Volkswagen AG*, No. 16-CR-20394, Rule 11 Plea Agreement, Ex. 2 (E.D. Mich. Jan. 11, 2017) *available at* https://www.justice.gov/usao-edmi/page/file/930026/download
[3] Volkswagen AG Press Release, "Volkswagen reaches settlements with U.S. government," (Jan. 11, 2017), *available at* https://www.volkswagen-media-services.com/en/detailpage/-/detail/Volkswagen-reaches-settlements-with-US-government/view/4455919/7a5bbec13158edd433c6630f5ac445da?p_p_auth=06FBhdcv

government's investigation into Volkswagen's world-wide, multi-billion-dollar fraud, shares had plummeted over 33% and the Company had lost over $26 billion in value.

21.     In November 2016, eager to distract from the "diesel crisis," a story still making headlines in the U.S., Brand Chief of the Volkswagen AG, Dr. Herbert Diess, announced a strategic rebranding campaign for Volkswagen, aptly named TRANSFORM 2025+. Diess' plan focused on swapping out the old diesel-centric image of Volkswagen for a sleek new one. The new Volkswagen brand would focus on electric vehicles, e-mobility and connectivity, and "significant improvements in efficiency and productivity." Volkswagen's goal to "change radically" meant "[v]ery few things will stay as they are."[4]

22.     Included in all of this was "a big come-back story" for the Company in America, one that would "require[] stamina." Thus, Volkswagen's TRANSFORM 2025+ was accompanied by a corresponding organizational reform known as the "Pact for the Future"—a global policy of eliminating older workers and replacing them with much younger ones.

23.     Volkswagen's Pact for the Future is a labor campaign designed to eliminate 30,000 jobs world-wide, with approximately 7,000 coming from North and South America, primarily comprised of workers "born between 1955 and 1960." This scheme entails, among other things, an alleged commitment to avoid layoffs. Rather than fire older workers, Volkswagen made a pact to "eliminate" them from the Company through "natural fluctuations." As part of this announcement, Dr. Karlheinz Blessing, Volkswagen AG's Human Resources Board Member, announced a commitment to "make Volkswagen slimmer, faster, and stronger."[5]

---

[4] Volkswagen US Media Site Press Release, "Transform 2025+ Volkswagen Presents its Strategy for the Next Decade," (Nov. 22, 2016).
[5] Volkswagen Akitengesellschaft, "News: Volkswagen concludes pact for greater economic viability and a more secure future" (November 18, 2016), *available at* https://www.volkswagenag.com/en/news/2016/11/VW_Zukunftspakt.html

24. Since their November 2016 introduction, the Company has implemented the twin-policies, TRANSFORM 2025+ and Pact for the Future, world-wide. And in the process, once again, Volkswagen's German leadership has implemented a policy that flouts American law. Volkswagen's policy of purging older workers from the management ranks is impermissible age discrimination.

25. To ensure the effective implementation of its Pact for the Future, Volkswagen held a human resources conference in March of 2017, noting that the Company's "human resources transformation is crucial for the success of the pact for the future."[6] One of the key topics of this conference was the "fair and rapid implementation of the transformation taking into consideration efficiency and economics" and the "development of the workforce of the brand and its locations." That same month, Volkswagen AG transferred its Senior Director of Human Resources from Germany to Chattanooga, Tennessee to act as the Senior Vice President of Human Resources for Volkswagen Group of America, Inc.

26. On June 6, 2017, Volkswagen issued a press release presenting strategy for the "next few months." The key topic of this meeting was implementing Volkswagen's Pact for the Future through a "fundamental personnel transformation." Human Resources Board Member, Dr. Karlheinz Blessing announced a goal of eliminating 9,300 jobs by July 31, 2017 as part of the "early retirement scheme for people born between 1955 and 1960." Dr. Blessing cautioned that older "employees who would rather continue to work are saying that they will make an active

---

[6] Volkswagen Brand Press Release, "Human resources professionals are committed to transparency and cooperation for the implementation of the pact for the future," Wolfsburg, Germany (Mar. 15, 2017), *available at* https://www.volkswagen-media-services.com/en/detailpage/-/detail/Human-resources-professionals-are-committed-to-transparency-and-cooperation-for-the-implementation-of-the-pact-for-the-future/view/4728352/6e1e015af7bda8f2a4b42b43d2dcc9b5?p_auth=OaU9yKxJ

contribution, will qualify for new tasks and will be prepared to transfer to another business area or location."[7]

27.    One week later, Volkswagen announced a new head of the Chattanooga facility, one who would report directly to Hinrich J. Woebcken, President and CEO of Volkswagen Group of America and CEO of Volkswagen AG's North American Region. Mr. Woebcken was brought on to serve in this dual role—working as an executive for Volkswagen AG and serving as President and CEO of Volkswagen Group of America—approximately seven months before the Pact for the Future was announced Mr. Woebcken previously worked at BMW along with Herbert Diess.

### C. Volkswagen Implements Their New Strategy in America

28.    Prior to the summer of 2017, Plaintiff was unaware of the Company's Pact for the Future or any Company-wide scheme targeting older employees in management levels for job elimination. However, the effects of the Pact for the Future began in Chattanooga months earlier.

29.    In March of 2017, around the time the new Senior Vice President of Human Resources arrived from Volkswagen AG, Mr. Manlove's Manager, in his early-sixties at the time, quickly and quietly departed the Company.

30.    Despite years of experience in Logistics, and specifically in Volkswagen's In-House Logistics group, Plaintiff was not allowed to apply for a promotion to the newly available Manager position.

31.    Instead, an employee in her early-thirties was promoted from the Information Technology ("IT") Department, where she managed approximately twelve employees, to Manager

---

[7] Volkswagen Akitengesellschaft, "News: Works meeting in Wolsfburg: Volkswagen to implement pact for the future consistently" (June 6, 2017), *available at*
https://www.volkswagenag.com/en/news/2017/06/VW_Betriebsversammlung_WOB.html

of In-House Logistics, where she managed approximately 280 employees and approximately 300 third-party contractors. She began this position in April 2017.

32.     On June 26, 2017, Volkswagen AG issued a press release touting its success in implementing the Pact for the Future. The press release headline noted "Volkswagen Brand Continues to Boost Productivity – Also in Management," a nod to the stereotype and misconception that older workers are less productive than younger workers. Volkswagen AG announced:

> The Volkswagen brand is consistently implementing the pact for the future in all areas of the company. The achievement of the 2017 productivity targets is proceeding to schedule; this also applies to personal reduction and the optimization of the human resources structure. The partial early retirement scheme for employees born between 1955 and 1960 will have a significant effect. It also concerns management. "**We are expecting our management levels to become younger and slimmer**," said CEO of the Volkswagen brand, Dr. Herbert Diess.[8]

33.     Diess went on to reiterate: "We are becoming slimmer, leaner and younger. This will make Volkswagen faster and more efficient at the same time as providing new motivation for junior managers."[9]

34.     Two days later, Mike Beamish, Executive Vice President of Human Resources for Volkswagen Group of America, sent an email to all employees of Volkswagen Group of America, including Plaintiff, that acknowledged the "presumed demographic impact" of the Company's plan to reduce the age of its workforce. Mr. Beamish stated that the press release may be "misinterpreted as a preference for employees based on a particular age," but claimed that the policy was only

---

[8] Volkswagen Media Services, "Volkswagen brand continues to boost productivity – also in management" (June 26, 2017) (emphasis added), *available at* https://www.volkswagen-media-services.com/en/detailpage/-/detail/Volkswagen-brand-continues-to-boost-productivity--also-in-management/view/5226049/7a5bbec13158edd433c6630f5ac445da?p_p_auth=6Mb7mZdc

[9] *Id.*

applicable to German employees. The email encouraged employees to reach out if they were victims of age discrimination or had any knowledge of discrimination.

35.     The next day, Human Resources informed Plaintiff Manlove that he would be demoted from Assistant Manager (grade-9) to Supervisor (grade-6), the position into which he was first hired by Volkswagen, and transferred out of Volkswagen Chattanooga's In-House Logistics Department, effective when the Chattanooga facility returned from its shut down on or around July 10, 2017.

### D.  Volkswagen Discriminates Against Plaintiff Manlove

36.     Mr. Manlove has extensive experience in both the automotive industry and the field of logistics. Mr. Manlove worked at Ford Motor Company for eight years, and has nine-years' experience in the field of logistics at United Parcel Service and Boise Cascade Office Products.

37.     In April 2011, Mr. Manlove began working for Volkswagen as a grade-6 Supervisor in the Production Department of the Chattanooga facility. After seven years with the Company, he had risen in rank to a grade-9 Assistant Manager of In-House Logistics.

38.     At all times during Mr. Manlove's employment, he received positive performance reviews, annual raises in salary, and annual bonus payments in recognition for his hard work.

39.     At all time prior to the Volkswagen's overt discrimination, as described below, Mr. Manlove enjoyed a professional and collegial work environment.

40.     In March 2017, the Manager of In-House Logistics, in his sixties, abruptly left Volkswagen. On information and belief, Mr. Williamson was forced out of the Company due to his age.

41.     Mr. Williamson's departure created an open Manager position in Logistics. Like many open positions at Volkswagen, this opening was not posted on the Company's internal job

posting site. Instead, Volkswagen relied on the "tap on the shoulder" promotion method to fill the position.

42.     Mr. Manlove was never provided an opportunity to apply for the promotion to the open position of Manager. On information and belief, none of the Assistant Managers in the In-House Logistics group over the age of fifty were given the opportunity to apply for the position.

43.     Instead, an employee in her early-thirties was promoted from the Information Technology ("IT") Department, where she managed approximately twelve employees, to Manager of In-House Logistics, where she would manage approximately 280 employees and over 300 third-party contractors.

### 1. Volkswagen Demotes Mr. Manlove

44.     Less than three months after Volkswagen promoted the new, younger Manager of In-House Logistics, Mr. Manlove was again subjected to adverse employment actions.

45.     On June 29, 2017, days after Volkswagen AG issued their press release that management ranks would become younger, and Volkswagen Group of America acknowledged the presumed demographics effects of this policy, Mr. Manlove was informed by Human Resources that he was being demoted from a grade-9 Assistant Manager to a grade-6 Supervisor and would be "on loan" to the Assembly Department.

46.     A Human Resources representative told Mr. Manlove that he had one year to find a new Assistant Manager position within Volkswagen or else his salary would be reduced, and his demotion and "on loan" status would become permanent which could result in the loss of his company car.

47.     The Human Resources representative assured Mr. Manlove that the demotion and transfer were in no way related to his performance. In fact, she said that Mr. Manlove's

performance had been great, and thanked him for his excellent work transitioning from Assistant Manager of Logistics Control to Assistant Manager of In-House Logistics. She stated that the Company was eliminating his position for "economic reasons," and assured Mr. Manlove that Human Resources would assist him in quickly finding another Assistant Manager position within the Company.

48.     Contrary to the "economic reasons" cited by Human Resources, approximately six months preceding Mr. Manlove's demotion, three Specialist-level employees—all around or under the age of 40—were promoted to the position of Assistant Manager in the Logistics Department. A mere two months before Mr. Manlove's position was eliminated, a Specialist-level employee in his twenties was promoted to an Assistant Manager position in the Logistics Department. On information and belief, Volkswagen did not post these positions, and instead personally chose which (younger) employees would fill these positions.

49.     Only after those positions were filled was Mr. Manlove's Assistant Manager position eliminated. The only two positions eliminated in Logistics were occupied by Mr. Manlove and another employee over the age of fifty. The only other employee over the age of fifty in the In-House Logistics group was given a newly created role of "Support Functions" Assistant Manager that was effectively a demotion, in part because he now oversaw twelve employees rather than ninety.

50.     Volkswagen's personnel shuffle in Logistics substituted three younger employees in place of two older ones, consistent with Volkswagen's goal of management levels "becoming leaner and younger." Since Volkswagen AG announced the Pact for the Future, and subsequently transferred their Human Resources Senior Director to serve as Senior Vice President of Human Resources in Chattanooga, there have been six individuals in their thirties promoted to the position

of Assistant Manager in the Logistics department, and two different employees in their thirties promoted to the position of Manager of In-House Logistics. In contrast, only two individuals over the age of fifty remain in a management position in Logistics. The chart below demonstrates the effect of Volkswagen's policy.

| Volkswagen Chattanooga Logistics Department | **Before** Pact for the Future | **After** Pact for the Future | **Difference** |
|---|---|---|---|
| Employees over 50[10] | 7 | 3 | -4 |
| Employees under 50 | 7 | 11 | +4 |

51.     On July 10, 2017, Mr. Manlove's demotion became effective. At that time, he was forced to explain personally to his new Manager and Assistant Manager in Assembly that his position had been eliminated in Logistics due to economic reasons, not performance issues, and that he was only "on loan" to Assembly until he found a new Assistant Manager position in the Company. His managers had been told only that certain Assistant Managers were being reassigned in the Company and asked if there was room for an additional Supervisor.

52.     Two months after Mr. Manlove was initially demoted and transferred, he received a formal letter from Volkswagen memorializing his demotion from an Assistant Manager of In-House Logistics to a Supervisor in Assembly. The letter stated that Mr. Manlove was demoted and transferred in recognition of his hard work. The explanation stated: "Occasionally, job rotations are necessary due to organizational need. As a result of the hard work and professionalism you have demonstrated in your current position, you have been selected for a new assignment which matches your background and qualifications." The letter further stated that Mr. Manlove "will remain a salary grade 9 for 12 months," after which the "salary grade will then change to the base grade of the new position, grade 6."

---

[10] Employees at or above grade-8 in rank

53.     This demotion essentially negates all of Mr. Manlove's hard work over the last seven years. Base grade-6 Supervisor is the position into which he was hired when he came to Volkswagen in 2011.

54.     Mr. Manlove's new managers recognize the disparity between his experience and current title of Supervisor, with one commenting that Mr. Manlove's talents were being "wasted" as a Supervisor.

## 2. Volkswagen Restricts Mr. Manlove From Obtaining an Equivalent Position

55.     After Mr. Manlove's demotion, he began watching for posted job openings at Volkswagen that matched his skills and experience. However, Volkswagen largely employs a word-of-mouth method of promotion, meaning many open positions are never posted. For example, of the four Assistant Manager positions in Logistics that have been filled since Mr. Manlove's demotion and transfer, he was unaware that these positions were open or available. They were not posted to the internal system, and Human Resources never informed him of the openings, despite their assurance that they would help him find a new position.

56.     In late January 2018, Mr. Manlove submitted his application for an open Product Specialist position within the Engineering and Planning Department. When Mr. Manlove submitted the application, the Human Resources representative overseeing the open position told him that he was an excellent candidate, had all of the requisite skills, and should expect an interview very soon. Two months later, he reached out an update and was told again that he was a great candidate, and that Human Resources was only waiting on the Manager of the Department to set up interviews.

57.     Two weeks later, in sharp contrast to the enthusiastic response he had initially received, Mr. Manlove was told that management had decided to go in a "different direction." He

was never even brought in for an interview. On information and belief, Mr. Manlove was not allowed to interview for this position because of his age.

58.     During the time that Mr. Manlove believed he was being considered for the open Product Specialist position, he was offered a competitive position with another automobile manufacturer. In reliance on the representation that he was a great candidate for the open position and would be interviewed very soon, and reliance on the false representation that Human Resources would assist him in finding another grade 9 position within the Company, Mr. Manlove ultimately declined this offer, to his detriment.

### 3. Volkswagen Restricts Mr. Manlove From Obtaining Any Other Position in the Company

59.     As part of Volkswagen's performance evaluation, or MBO, process, Managers go over goals, performance, and recommendations with their direct reports before submitting the filled-out performance evaluation to Human Resources. One item on the MBO asks Managers to identify the employee's potential for promotion. Managers are asked to designate the employee as "vertical," meaning able for advancement in position, "horizontal," meaning able for lateral transfer to other departments, or "remain in position," meaning employee is not eligible to move or apply for any other position in the Company for one year. Human Resources reviews each employee's MBO as-submitted by the employee's Manager, then enters a "finalized" MBO into the Company's personnel system. This is the standard procedure for all salaried employees.

60.     In March of 2018, Mr. Manlove met with his Manager to discuss his MBO. Both agreed that Mr. Manlove had met or exceeded all of his 2017 goals. Considering his years of experience as an Assistant Manager and positive 2017 review, his Manager designated Mr. Manlove "vertical" advancement status. Human Resources management entered Mr. Manlove's MBO information into the Human Resources system, and changed his designation to "remain in

position." Mr. Manlove's Manager reached out to Human Resources and pushed back against this change in his advancement status. Human Resources simply responded that the change in his status would stay, and Mr. Manlove would be designated "remain in position," and unable to apply for any other positions in the Company, for the next year.

61. In April 2018, Mr. Manlove received his finalized MBO from Human Resources. All aspects of the finalized MBO matched the one he had discussed with his Manager, except for his advancement status, which was changed from "vertical" to "remain in position."

62. Shortly after he received his MBO, Mr. Manlove informed Volkswagen that he had retained counsel for claims of age discrimination. Two weeks later, a Human Resources representative emailed Mr. Manlove to explain that his advancement status had been entered in error. However, this explanation is inconsistent with his Manager's previous conversation with Human Resources regarding Mr. Manlove's advancement status. If Mr. Manlove's advancement status had been made in error, his status would have been changed after Human Resources was informed of the inconsistency. Further, Human Resources claimed to change his one-year advancement status to vertical, but assigned him a three-year advancement status of "remain in position," meaning Mr. Manlove is still ineligible for a vertical promotion. And, even if Mr. Manlove's advancement status changes in the Volkswagen system, this means nothing if Mr. Manlove is prevented from interviewing for any open positions.

63. Although Volkswagen initially promised to assist Mr. Manlove in finding a new Assistant Manager position, the Company is purposefully setting barriers to prevent him from doing so. Despite being told he was demoted and transferred in recognition of his excellent work, and was only "on loan" as a Supervisor in Assembly, Volkswagen has guaranteed that his demotion, and impending cut in pay and benefits, is permanent.

64. The culmination of adverse actions by Volkswagen AG against Mr. Manlove, and the dramatic shift in demographics following Volkswagen's announced Pact for the Future, suggests that Volkswagen has implemented a targeted policy of discrimination against employees aged fifty and over, one that presents a continuing threat of adverse action and corresponding harm to Volkswagen's U.S. employees.

## COLLECTIVE ALLEGATIONS

65. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

66. Plaintiff brings collective claims under the ADEA pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of all Volkswagen employees in the United States age fifty (50) and over who have been subjected to adverse employment action as a result of Volkswagen's Company-wide policy of age-discrimination, who opt into this ADEA action by filing a Consent to Join with the Court ("ADEA Collective").

67. Plaintiff brings collective claims under the Tennessee Human Rights Act ("THRA") T.C.A § 4-21-101, *et seq*, on behalf of all Volkswagen employees in Tennessee age fifty (50) and over who have been subjected to adverse employment action as a result of Volkswagen's Company-wide policy of age-discrimination. ("THRA Collective")

68. Plaintiff and members of the collective action are similarly situated with respect to their claims that Volkswagen transferred, demoted, or otherwise pressured them into leaving their employment with Volkswagen.

69. There is a common nexus of fact and law suggesting that Plaintiff and members of the collective action were discriminated against in the same manner. Questions at issue in the case include:

(a) Whether Volkswagen unlawfully demoted and/or transferred older employees, thus reducing or threatening to reduce their compensation and other employment benefits;

(b) Whether Volkswagen unlawfully denied older employees opportunities for promotion, thus affecting their compensation and other employment benefits;

(c) Whether Volkswagen unlawfully coerced or attempted to coerce older employees into leaving the company,

(d) Whether Volkswagen's resulting disparate treatment of older employees when compared to similarly situated younger employees was willful within the meaning of the ADEA.

70.     Counts for violations of the ADEA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the ADEA Collective Action Plaintiffs who opt-in to this action because the claims of the Plaintiff are similar to the claims of the EPA Collective Action Class.

71.     Mr. Manlove, and the ADEA Collective Action Plaintiffs (a) are similarly situated and (b) are subject to Defendant's common policy and practice of age discrimination in coercing older employees to leave their positions and denying them fair opportunity for work, compensation, and promotion when compared to similarly situated younger employees.

**ARBITRATION AGREEMENT**

72.     On May 25, 2018, shortly after Mr. Manlove retained legal counsel for his claims of age discrimination, Volkswagen in-house counsel represented that Mr. Manlove had an arbitration agreement with the Company.

73.     Section 5 of the arbitration agreement states:

Injunctive Relief. Nothing in this Agreement shall be interpreted to prevent or restrict either party from seeking provisional injunctive relief, where appropriate, in a court of competent jurisdiction. Injunctive relief includes, but is not limited to, temporary and/or permanent injunctions or retraining orders.

74.     Plaintiff seeks only injunctive relief from the Court, including temporary and permanent injunctions, on behalf of himself and other similarly situated in this action.

## CAUSES OF ACTION

### COUNT ONE

**Age Discrimination in Violation of the ADEA, 29 U.S.C.S. §§ 621, *et seq*.**

**(On Behalf of Plaintiff Jonathan Manlove and the ADEA Collective)**

75.     Plaintiff realleges and incorporates by reference the allegations in all preceding paragraphs.

76.     It is unlawful for any employer to "discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." ADEA, 29 USC §§ 623(a)(1).

77.     It is also unlawful for an employer to "limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the status of an employee, because of such individual's age." ADEA, 29 USC §§ 623(a)(2).

78.     Plaintiff is a member of a protected class as an employee older than forty years of age, and at all relevant times was, and is, an employee of Volkswagen.

79.     The adverse employment actions alleged include, *inter alia*, Plaintiff's job elimination, demotion, department transfer, and inability to apply for new positions, constitute discriminatory practices by the Company against Mr. Manlove based on his age.

80. Volkswagen discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of his employment. Further, these adverse employment actions were designed to limit, segregate, or classify Plaintiff in such a way that he was deprived of individual employment opportunities and his status as an employee was adversely affected.

81. Volkswagen's adverse employment actions against Plaintiff, and adverse employment actions against members of the ADEA Collective, were undertaken in direct violation of the ADEA, 29 U.S.C.S. §§ 621, *et seq.*

82. Age is not a bona fide occupational qualification reasonably necessary to the normal operation of Volkswagen.

83. As a result of Volkswagen's Company-wide policy of discrimination, and individual discriminatory practices, Plaintiff has suffered, and will continue to suffer, irreparable injury, including, but not limited to: a demotion in title that irreparably harms his ability to gain employment commensurate with his experience, skills, and training; an impending reduction in salary that will irreparably injure his ability to gain employment elsewhere commensurate with his experience, skills, and training; the prevention of Plaintiff's ability to apply for or receive any promotion in title at Volkswagen for the next three years; mental distress; humiliation and embarrassment; emotional pain and suffering; inconvenience; mental anguish; loss of enjoyment of life, and other nonpecuniary losses which monetary damages at a later time cannot adequately compensate. On information and belief, members of the ADEA Collective have or will suffer similar irreparable injury as a result of Volkswagen's common policy of discrimination.

84. Plaintiff is entitled to injunctive relief maintaining the status quo of the terms of his employment through enjoining Volkswagen from any further act of discrimination against him, injunctive relief returning him to the original terms and conditions of his employment prior to

Defendants' unlawful discrimination; and injunctive collective relief preventing and correcting discrimination by Defendants against other similarly situated employees; and any other such relief as the Court should deem proper.

## COUNT TWO

### Age Discrimination in Violation of the THRA, T.C.A. §§ 4-21-101, *et seq.*

### (On Behalf of Jonathan Manlove and the THRA Collective)

85. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

86. It is unlawful for any employer to "discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . age." TCA § 4-21-401(a)(1).

87. It is also unlawful for an employer to "[l]imit, segregate or classify an employee . . . in any way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of . . . age." TCA § 4-21-401(a)(2).

88. Plaintiff is a member of a protected class as an employee older than forty years of age, and at all relevant times was, and is, an employee of Volkswagen.

89. The adverse employment actions alleged include, *inter alia*, Plaintiff's job elimination, demotion, department transfer, inability to apply for new positions, constitute discriminatory practices by the Company against Mr. Manlove based on his age.

90. Volkswagen discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of his employment. Further, these adverse employment actions were designed to limit, segregate, or classify Plaintiff in such a way that he was deprived of individual employment opportunities and his status as an employee was adversely affected.

91.     Volkswagen's adverse employment actions against Plaintiff were undertaken in direct violation of the THRA, T.C.A. § 4-21-401.

92.     Age is not a bona fide occupational qualification reasonably necessary to the normal operation of Volkswagen.

93.     As a result of Volkswagen's Company-wide policy of discrimination, and individual discriminatory practices, Plaintiff has suffered, and will continue to suffer, irreparable injury, including, but not limited to: a demotion in title that irreparably harms his ability to gain employment commensurate with his experience, skills, and training; an impending reduction in salary that will irreparably injure his ability to gain employment elsewhere commensurate with his experience, skills, and training; the prevention of Plaintiff's ability to apply for or receive any promotion in title at Volkswagen for the next three years; mental distress; humiliation and embarrassment; emotional pain and suffering; inconvenience; mental anguish; loss of enjoyment of life, and other nonpecuniary losses which monetary damages at a later time cannot adequately compensate. On information and belief, members of the THRA Collective have or will suffer similar irreparable injury as a result of Volkswagen's common policy of discrimination.

94.     Plaintiff is entitled to injunctive relief maintaining the status quo of the terms of his employment through enjoining Volkswagen from any further act of discrimination against him, injunctive relief returning him to the original terms and conditions of his employment prior to Defendants' unlawful discrimination; and injunctive collective relief preventing and correcting discrimination by Defendants against other similarly situated employees; and any other such relief as the Court should deem proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.      Preliminary and permanent injunction against Volkswagen and its officers, agents, and managers from continued unlawful discrimination against Plaintiff Manlove and similarly situated employees in violation of the ADEA and THRA;

B.      Preliminary and permanent injunction ordering the reinstatement of Mr. Manlove to a grade-9 Assistant Manager position within the Company;

C.      Preliminary and permanent injunction restoring Mr. Manlove's advancement status to "vertical" in all categories;

D.      Preliminary and permanent injunction against any further unlawful demotion or transfer of Volkswagen's United States employees age fifty (50) and over;

E.      Conditional certification of an opt-in collective for all United States employees of Volkswagen age fifty (50) and older who have suffered adverse employment action from Volkswagen's common policy of age discrimination; and

F.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all triable questions of fact raised in this Amended Complaint.

Dated:  June 29, 2018

Respectfully submitted,

Kevin Sharp (TNBPR #: 016287)
Leigh Anne St. Charles (*pro hac vice* forthcoming)
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
T: (615) 434-7000
F: (615) 434-7020
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

David Sanford (*pro hac vice* forthcoming)
Andrew Melzer (*pro hac vice* forthcoming)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
(646) 402-5655
dsanford@sanfordheisler.com
amelzer@sanfordheisler.com

*Attorneys for Plaintiff*