**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| JONATHAN MANLOVE,<br>Individually, and on behalf of others<br>similarly situated | )<br>)<br>)<br>) | No. 1:18-cv-145 |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| | ) | Judge McDonough |
| VOLKSWAGEN AKTIENGESELLSCHAFT,<br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br>and VOLKSWAGEN GROUP OF AMERICA<br>CHATTANOOGA OPERATIONS, LLC | )<br>)<br>)<br>) | Magistrate Judge Steger |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.      INTRODUCTION: WHY A PRELIMINARY INJUNCTION IS NEEDED .....................1

II.     SUMMARY OF RELEVANT FACTS ..............................................................................3

        A.      Volkswagen's Global Campaign to Eliminate Older Workers...............................3

        B.      Volkswagen Denies Mr. Manlove a Promotion for Which He is Qualified...........4

        C.      As Part of its Campaign, Volkswagen Demotes and Transfers Mr. Manlove ........5

        D.      Consistent with its Pact for the Future, Volkswagen Blocks Mr. Manlove from
                Advancing Within the Company ...........................................................................7

III.    LEGAL STANDARD.........................................................................................................8

IV.     THE COURT SHOULD ENTER A PRELIMINARY INJUNCTION AGAINST
        VOLKSWAGEN'S DISCRIMINATORY PRACTICES ...................................................9

        A.      Plaintiff and the Class Are Likely to Succeed on the Merits of Their Age
                Discrimination Claims, Warranting Final Injunctive Relief...................................9

        B.      Absent an Injunction, Volkswagen's Actions Will Cause Irreparable Harm ........14

                1.      Demoting Class Members Such as Plaintiff Manlove and Preventing them from
                        Competing for Promotions Has and Will Continue to Cause Irreparable Harm
                        ....................................................................................................................15

                2.      Any Further Adverse Actions Pursuant to Pact for the Future Will Cause
                        Irreparable Harm........................................................................................18

        C.      A Preliminary Injunction Will Not Harm Others and is in the Public Interest......20

V.      CONCLUSION................................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Abney v. Amgen, Inc.*,
    443 F.3d 540 (6th Cir. 2006) ............................................................................... 17

*Allen v. Highlands Hosp. Corp.*,
    545 F.3d 387 (6th Cir. 2008) ............................................................................... 13

*Arizona Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ............................................................................... 20

*Becton v. Thomas*,
    48 F. Supp. 2d 747 (W.D. Tenn. 1999)................................................... 11, 18, 19

*Bender v. Hecht's Dep't Stores*,
    455 F.3d 612 (6th Cir. 2006) ............................................................................... 12

*Bonds v. Heyman*,
    950 F. Supp. 1202 (D.D.C. 1997) ........................................................................ 20

*Brinkley v. Bd. of Comm'rs of Franklin Cty., Ohio*,
    No. 2:12-CV-00469, 2013 WL 394158 (S.D. Ohio Jan. 29, 2013)........................ 20

*Caspar v. Snyder*,
    77 F. Supp. 3d 616 (E.D. Mich. 2015).................................................................. 22

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ............................................................................... 11

*Chalk v. U.S. Dist. Court Cent. Dist. of California*,
    840 F.2d 701 (9th Cir. 1988) ............................................................................... 20

*D.J. Miller & Assocs., Inc. v. Ohio Dep't of Admin. Servs.*,
    115 F. Supp. 2d 872 (S.D. Ohio 2000) .......................................................... 23, 24

*Dews v. A.B. Dick Co.*,
    231 F.3d 1016 (6th Cir. 2000) ............................................................................. 16

*E. E. O. C. v. Chrysler Corp.*,
    546 F. Supp. 54 (E.D. Mich. 1982)........................................................... 20, 22, 23

*E.E.O.C. v. City of Ecorse*,
No. 81-71204, 1981 WL 217 (E.D. Mich. June 12, 1981) .................................................... 24

*E.E.O.C. v. Tepro, Inc.*,
133 F. Supp. 3d 1034 (E.D. Tenn. 2015) ............................................................................. 13

*Eades v. Brookdale Senior Living, Inc.*,
401 F. App'x 8 (6th Cir. 2010) ........................................................................................... 15

*Friendship Materials, Inc. v. Michigan Brick, Inc.*,
679 F.2d 100 (6th Cir. 1982) ............................................................................................. 11

*Gately v. Com. of Mass.*,
2 F.3d 1221 (1st Cir. 1993) ................................................................................................ 20

*Gavagan v. Danbury Civil Serv. Comm'n*,
No. B-82-307, 1983 WL 510 (D. Conn. Feb. 4, 1983) ........................................................ 20

*Gross v. FBL Fin. Servs.*,
557 U.S. 167 (2009) ........................................................................................................... 12

*Heineke v. Santa Clara Univ.*,
No. 17-16876, 2018 WL 2377845 (9th Cir. May 25, 2018) ................................................. 22

*Howard, v. New Bern Transport Corp.*,
No. 1:17CV161, 2018 WL 5046111 (E.D. Tenn. Oct. 17, 2018) ......................................... 12

*Howe v. City of Akron*,
723 F.3d 651 (6th Cir. 2013) ......................................................................................... 19, 23

*Int'l Bhd. of Teamsters v. U.S.*,
431 U.S. 324 (1977) .............................................................................................................. 4

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson
Controls, Inc.*, 499 U.S. 187 (1991) .................................................................................. 12

*Johnson v. City of Memphis*,
444 F. App'x 856 (6th Cir. 2011) ....................................................................................... 19

*Junhe Qiu v. Univ. of Cincinnati*,
No. 1:18-CV-634, 2018 WL 4496304 (S.D. Ohio Sept. 19, 2018) ....................................... 24

*Leary v. Daeschner*,
228 F.3d 729 (6th Cir. 2000) ....................................................................................... 10, 23

iii

*Lee v. Cleveland Clinic Found.*,
    676 F. App'x 488 (6th Cir. 2017) ........................................................................ 14

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*,
    707 F. Supp. 2d 520 (D.N.J. 2010) ...................................................................... 20

*Nguyen v. City of Cleveland*,
    229 F.3d 559 (6th Cir. 2000) .............................................................................. 13

*Nosworthy v. Beard*,
    87 F. Supp. 3d 1164 (N.D. Cal. 2015) ................................................................ 22

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) .............................................................................. 17

*Oshiver v. Court of Common Pleas, Court Admin.*,
    469 F. Supp. 645 (E.D. Pa. 1979) ...................................................................... 20

*Ritter v. State of Oklahoma*,
    No. CIV-16-0438-HE, 2016 WL 2659620 (W.D. Okla. May 6, 2016) .................... 20

*Sampson v. Murray*,
    415 U.S. 61 (1974) .............................................................................................. 21

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
    119 F.3d 393 (6th Cir. 1997) .............................................................................. 11

*Stenberg v. Cheker Oil Co.*,
    573 F.2d 921 (6th Cir. 1978) .............................................................................. 11

*Tuttle v. Metro. Gov't of Nashville*,
    474 F.3d 307 (6th Cir. 2007) .............................................................................. 14

*United Steelworkers of Am., AFL-CIO v. Textron. Inc.*,
    836 F.2d 6 (1st Cir. 1987) .................................................................................. 22

**Statutes**

29 U.S.C. § 621, *et seq.* ........................................................................................ 11, 12

Tenn. Code Ann. § 4-21-101, *et seq.* ...................................................................... 12

iv

**Other Authorities**

1978 U.S. Code Cong. & Adm. News 507 ................................................................................ 19

Andreas Cremer and Jan Schwartz, Volkswagen to cut 30,000 jobs, Reuters (Nov. 18, 2016, 2:46 AM) ......................................................................................................................................... 3

"Transform 2025+ Volkswagen presents its strategy for the next decade," Volkswagen Press Release, (Nov. 22, 2016) ....................................................................................................... 10

"Volkswagen brand continues to boost productivity – also in management," Volkswagen Press Release (June 26, 2017) .......................................................................................... 4, 10

"Volkswagen concludes pact for greater economic viability and a more secure future," Volkswagen Press Release (Nov. 18, 2016) ............................................................................... 3

"Works meeting in Wolfsburg: Volkswagen to implement pact for the future consistently," Volkswagen Press Release (June 6, 2017) ................................................................................. 3

## I.      Introduction: Why a Preliminary Injunction is Needed

This action seeks injunctive relief against Defendants'[1] systematic, class-wide policy and plan to phase out workers over the age of fifty, including Plaintiff and proposed class representative Jonathan Manlove. In particular, Plaintiff seeks a class-wide liability finding and declaration that Volkswagen's practices are unlawful and have resulted in a pattern or practice of discrimination against older workers, as well as an injunction preventing Volkswagen from carrying out its illegal policy and addressing the effects of its acts (Phase I of a proceeding under *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324 (1977)). Class members would then be free to pursue individual monetary relief in separate hearings, including in arbitration (*Teamsters* Phase II).

Under Volkswagen's announced plans to target older workers, Plaintiff and the class members remain at continual, imminent risk of adverse employment actions—such as demotions, transfers, and terminations—along with other hostile treatment, that would dramatically alter the landscape of this action and hinder the Court's ability to grant meaningful and effective final relief at the end of the case. In the process, it is virtually inevitable that many class members would suffer irreparable and irreversible injury—including financial privation, loss of valuable job training and opportunities, and significant emotional distress. Accordingly, the Court should issue a preliminary injunction to preserve and restore the *status quo*, maintain the integrity of the litigation, and safeguard the Court's jurisdiction over this matter.

---

Volkswagen has publicly touted an ambitious personnel policy dubbed the "Pact for the Future," the key element of which involves eliminating thousands of jobs globally by phasing out

---

[1] Defendants are Volkswagen Aktiengesellschaft ("VW AG"), Volkswagen Group of America, Inc. ("VWGoA"), and Volkswagen Group of America Chattanooga Operations, LLC ("VW Chattanooga"), collectively "Volkswagen" or the "Company."

1

older workers. Volkswagen's Pact is not idle talk: It has proceeded to implement this initiative aggressively. And, Plaintiff Manlove is one of the many victims, the embodiment of Volkswagen's Pact in microcosm. Just as it said it would in its Pact, Volkswagen has taken repeated adverse actions against Mr. Manlove, a 53-year-old employee. These actions include demoting Mr. Manlove, blocking him from being considered for promotions, and subjecting him to unfavorable working conditions and intense scrutiny. Because Volkswagen's actions against Mr. Manlove continue to escalate, emergency relief is needed to maintain the *status quo* while he litigates his individual and class claims against Volkswagen.

Absent a preliminary injunction, Volkswagen will continue to subject Mr. Manlove to persistently harsh and more antagonistic treatment; hold him in a position well below his level of skill and experience while artificially blocking him from applying for and being considered for promotions for which he is well-qualified; and, subject him to heightened scrutiny and increasingly difficult assignments until he quits or is fired. Volkswagen will get what it wants, fulfilling its corporate directives to eliminate an older worker; yet, as it knows, it would be an uphill battle for Plaintiff to establish constructive discharge. Moreover, Plaintiff's termination during the litigation will send a powerful and irreversible message to class members that Volkswagen can get away with its conduct, and will likely deter them from joining the action and pursuing relief against Defendant's practices.

Accordingly, the Court should issue a preliminary injunction preventing Volkswagen from further implementing its Pact for the Future by targeting older workers in the United States, and specifically ordering Defendants to correct the adverse actions already taken against Plaintiff Jon Manlove. In the alternative, the Court should allow Plaintiff to conduct limited discovery and hold an evidentiary hearing regarding Plaintiff's Motion for Preliminary Injunction.

## II.    Summary of Relevant Facts

### A.    Volkswagen's Global Campaign to Eliminate Older Workers

In or about November 2016, Volkswagen announced its "Pact for the Future," designed to "eliminate" approximately 30,000 older workers from the Company world-wide. *See* Andreas Cremer and Jan Schwartz, Volkswagen to cut 30,000 jobs, Reuters (Nov. 18, 2016, 2:46 AM);[2] "Volkswagen concludes pact for greater economic viability and a more secure future," Volkswagen Press Release (Nov. 18, 2016).[3] Volkswagen celebrated its campaign through a number of public statements and press releases. On June 6, 2017, Human Resources Board Member Dr. Karlheinz Blessing gave a public status update on the successful implementation of the Pact for the Future, and announced that Volkswagen was on track to eliminate 9,300 jobs of older workers as part of the "early retirement scheme for people born between 1955 and 1960." *See* "Works meeting in Wolfsburg: Volkswagen to implement pact for the future consistently," Volkswagen Press Release (June 6, 2017).[4] Dr. Blessing encouraged employees to take advantage of the early retirement scheme, and cautioned that older "employees who would rather continue to work … will qualify for new tasks and **will be prepared to transfer to another business area or location**." *Id.* (emphasis added). In other words, Volkswagen intended to transfer or demote older workers who were reluctant to leave voluntarily. On June 26, 2017, Volkswagen issued yet another press release touting its success in implementing the Pact for the Future; VW AG CEO Dr. Herbert Diess stated: "We are expecting our management levels to become **younger** and slimmer[.]" *See*

---

[2] *available at* https://www.reuters.com/article/us-volkswagen-costs/volkswagen-to-cut-30000-jobs-idUSKBN13D0UJ (last visited Dec. 5, 2018) (noting that of the 30,000 jobs to be eliminated world-wide, approximately 23,000 would be eliminated in Germany, while the remaining 7,000 jobs would be eliminated in North America, Brazil, and Argentina).
[3] *available at* https://www.volkswagenag.com/en/news/2016/11/VW_Zukunftspakt.html (last visited Dec. 5, 2018).
[4] *available at* https://www.volkswagenag.com/en/news/2017/06/VW_Betriebsversammlung_WOB.html (last visited Dec. 5, 2018).

3

"Volkswagen brand continues to boost productivity – also in management," Volkswagen Press Release (June 26, 2017) (emphasis added).[5]

Plaintiff Jon Manlove is emblematic of Volkswagen's tactics in achieving its desired "younger and slimmer" workforce. Mr. Manlove, who is 53 years old, has been an employee of Volkswagen in Chattanooga, Tennessee for over seven years. Pl. Decl. ¶¶ 2-4. Mr. Manlove brought extensive experience in both the automotive industry and the field of logistics to Volkswagen in April 2011, when he began working as a Level 6 Supervisor in the Production Department. *Id*. ¶ 4. During his seven years with Volkswagen, Mr. Manlove has consistently received positive performance evaluations. *Id*. ¶ 7. In 2015, Mr. Manlove was promoted to Assistant Manager in the Logistics Control department before assuming the role of Assistant Manager of In-House Logistics, a Level 9 position. *Id*. ¶ 5. Despite Mr. Manlove's exemplary employment history and record of success, Volkswagen has initiated a discriminatory campaign against him in a calculated effort to remove him from the Company. Volkswagen first stalled his career at the Company—blocking him from further advancement—and then struck out against him through an unwarranted demotion and transfer. When Mr. Manlove asserted his rights in this Court, Volkswagen imparted on a campaign designed to make a public example of Mr. Manlove and drive him out of the Company.

### B. Volkswagen Denies Mr. Manlove a Promotion for Which he is Qualified

In March 2017, a Manager position became open in Logistics. Pl. Decl. ¶ 16. Like many open positions at Volkswagen, this opening was not posted on the Company's internal job posting site, and Mr. Manlove was never provided an opportunity to apply for the promotion. *Id*. ¶¶ 16-17. Instead, an employee in her early-thirties was brought in from the Information Technology

---

[5] *available at* https://www.volkswagen-newsroom.com/en/press-releases/volkswagen-brand-continues-to-boost-productivity-also-in-management-993 (last visited Dec. 5, 2018).

("IT") Department, where she managed approximately twelve employees, to manage the In-House Logistics Department, where she managed approximately 280 employees and over 300 third-party contractors. *Id*. ¶ 19.

In fact, Mr. Manlove has not been allowed to apply for *any* open Manager positions because Volkswagen has not selected him to complete the Management Assessment Center ("MAC"). *Id*. ¶¶ 17-18. In order to be eligible for promotion to Manager, Volkswagen claims that an employee must first complete the MAC, during which a committee of Managers evaluate the employee's performance in management situations. *Id*. ¶ 17. However, there are no objective criteria by which an employee is selected by management to participate in the MAC, nor can the employee apply directly to participate in the MAC. *Id*. ¶ 18. In practice, the Company can refuse to permit older employees to participate in the MAC, then pretextually claim that they cannot be promoted because they had not completed the MAC. As part of its plan to phase out older workers, Volkswagen thus imposes an effective embargo on promotions. *Id*. ¶¶ 17-18.

### C. As Part of its Campaign, Volkswagen Demotes and Transfers Mr. Manlove

On June 29, 2017, in accordance with its Pact for the Future, Volkswagen demoted Mr. Manlove from his position as a Level 9 Assistant Manager and transferred him into the Assembly Department. Pl. Decl. ¶ 8. Mr. Manlove was demoted to a Level 6 Supervisor—the Level at which he came in when he started working for Volkswagen seven years ago.[6] *Id*. Mr. Manlove's new Managers in the Assembly Department recognized that he was overqualified for the new position, with one even commenting that Mr. Manlove's talents were being "wasted" as a Level 6 Supervisor. *Id*. ¶ 12.

---

[6] The demotion to Level 6 Supervisor is further significant because Supervisor employees can be either Level 6 or Level 7. Volkswagen chose to assign Mr. Manlove to the lowest Level.

5

Volkswagen assured Mr. Manlove that that his demotion and transfer was *not* related to his performance and claimed that his position was simply being eliminated for "economic reasons." *Id*. ¶ 10. Further, Volkswagen never explained *why* the need to reorganize the In-House Logistics Department would justify demoting him to a Level 6 Supervisor. In fact, just months before demoting Mr. Manlove, Volkswagen *promoted* several other employees—all around or under the age of forty—to the position of Assistant Manager in the Logistics Department, the department in which Mr. Manlove had been an Assistant Manager since 2015. *Id*. ¶ 13. Volkswagen did not demote or transfer any of these younger, newly promoted Assistant Managers. Instead, it chose to "eliminate" the jobs of Assistant Managers over 50 years old—each of whom had seniority in the department. *Id*. ¶ 14.

Along with this demotion, Volkswagen threatened to slash Mr. Manlove's salary and take away his company car. *See* Pl. Decl., Ex. A. Volkswagen informed him that he "will remain a salary grade 9 for 12 months," after which the "salary grade will then change to the base grade of the new position, grade 6." *See* Pl. Decl., Ex. A. Since June 2017, Mr. Manlove has been living with the uncertainty that Volkswagen might decide, any day, to slash his salary, to the *base level salary* for Level 6 employees, as opposed to his salary consistent with his years of experience as an Assistant Manager.

In or around July 10, 2018, only days after Mr. Manlove filed his Complaint alleging age discrimination, Volkswagen transferred Mr. Manlove again, switching him to supervising the BA2 line. *Id*. ¶ 35. The BA2 line is particularly difficult to supervise due to its many production, quality, and manpower issues. *Id*. ¶¶ 36-40. Despite these issues, Volkswagen provided Mr. Manlove with only approximately two weeks of training regarding the operations of the line and removed the best performing worker from the line for seemingly pretextual reasons, thus making his new

6

position all the more challenging. *Id.* ¶¶ 41-43. All of these actions are designed to set Mr. Manlove up to fail and to induce him to leave the Company.

### D. Consistent with its Pact for the Future, Volkswagen Blocks Mr. Manlove from Advancing Within the Company

Since his demotion, Volkswagen has actively prevented Mr. Manlove from advancing above a Level 6 position—using its internal performance evaluation system to block him from applying for or being considered for promotions. As part of Volkswagen's performance evaluation process, Managers are asked to identify the employee's potential for promotion. In March of 2018, Mr. Manlove's Manager designated his advancement status as "vertical," meaning he would be eligible to apply to promotions. Pl. Decl. ¶ 28. This assessment—based on Mr. Manlove's actual performance and qualifications—clearly went against the Company script. Thus, Volkswagen's Human Resources department altered Mr. Manlove's advancement status to "remain in position," rendering him ineligible to move or apply for any other position in the Company. *Id.* ¶ 29. Mr. Manlove's Manager pushed back against this change, but Human Resources refused to give Mr. Manlove "vertical" advancement status. *Id.* ¶ 30.

After Mr. Manlove informed Volkswagen that he had retained counsel for claims of age discrimination, a Human Resources representative suddenly emailed Mr. Manlove to explain that his altered advancement status had been a "mistake"—an explanation entirely different than was previously given to Mr. Manlove's Manager. *See* Pl. Decl., Ex. B; Pl. Decl. ¶ 32. Further, Human Resources claimed to change his *one-year* advancement status to vertical but assigned him a *three-year* advancement status of "remain in position," meaning that Mr. Manlove is **still ineligible** for a vertical promotion.[7] *See* Pl. Decl., Ex. B; Pl. Decl. ¶ 32.

---

[7] At a Court hearing on November 8, 2018, Counsel for Volkswagen claimed, again, that this classification was simply an administrative error and would be remedied. Plaintiff has still not received any update about his advancement status, and therefore assumes that his status remains unchanged. Moreover, Plaintiff has

## III.    Legal Standard

On a motion for a preliminary injunction, courts consider four factors:  "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted).

In this Circuit, the district court has discretion to grant a preliminary injunction "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, **but where he at least shows serious questions** going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (emphasis added). "Plaintiff **does not** have to convince the court that [he] will prevail or present such an overwhelming flood of favorable evidence that the court cannot help but conclude that [he] will win on the merits." *Becton v. Thomas*, 48 F. Supp. 2d 747, 754 (W.D. Tenn. 1999) (emphasis added). Instead, movants must simply raise "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

"If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury . . . by returning to the last uncontested

---

not been given adequate assurances that he will be fairly considered for promotions for which he is qualified.

status quo between the parties . . . ."). *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). As set forth below, the circumstances weigh heavily in favor of granting Plaintiff the relief sought.

IV.    **The Court Should Enter a Preliminary Injunction Against Volkswagen's Discriminatory Practices**

A.    **Plaintiff and the Class Are Likely to Succeed on the Merits of Their Age Discrimination Claims, Warranting Final Injunctive Relief**

Mr. Manlove brings claims of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., ("ADEA") and the Tennessee Human Rights Act, Tenn. Code§ 4-21-101, et seq., ("THRA") and has raised serious and substantial questions going to the merits of both claims. Both laws prohibit "employers from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (quotation marks and citation omitted). "[U]nder both the THRA and the ADEA, a plaintiff 'must prove by a preponderance of the evidence … that age was the 'but-for' cause of the challenged employer decision.'" *Howard, v. New Bern Transport Corp.,* No. 1:17CV161, 2018 WL 5046111, at *3 (E.D. Tenn. Oct. 17, 2018) (ellipsis in original) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 178 (2009)).

First, the class is highly likely to succeed on its claims, as Volkswagen's Pact for the Future—an explicit plan to target and phase out older workers—is discriminatory and unlawful on its face. *See, e.g.*, *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 197-199 (1991). Final injunctive relief against Volkswagen's policies would be appropriate under 29 U.S.C. § 626(c) and the THRA. Volkswagen is left with the implausible defenses that it did not really mean what it said or that it made a blanket

9

exception for workers in the United States for implementation of this *particular* part of its policy, but has proceeded apace with implementing all other aspects of its widely announced organizational shifts.[8] Such defenses are belied by the experiences of Plaintiff Manlove and other similarly-situated class members.

Second, Plaintiff Manlove is also likely to succeed on his individual claims of age discrimination. Plaintiff provides *direct* evidence that Volkswagen is discriminating against him on the basis of his age. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen v. Highlands Hosp. Corp*., 545 F.3d 387, 394 (6th Cir. 2008). As detailed above, Volkswagen has implemented a global policy to eliminate older workers, and its leaders have made statements demonstrating Volkswagen's clear intent to do so. Even after its announcement of the Pact, Volkswagen has released subsequent press releases touting its success in implementing the Pact for the Future , with Volkswagen's CEO explicitly touting that its management levels would "become **younger** and slimmer[.]" *See* "Volkswagen brand continues to boost productivity," Volkswagen Press Release (June 26, 2017).[9] "[A] facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group" **is direct evidence of discriminatory intent**. *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1059 (E.D. Tenn. 2015) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Thus, the existence of Volkswagen's Pact for the Future, and express statements by Company leadership, together satisfy this factor of the preliminary

---

[8] *See, e.g.*, "Transform 2025+ Volkswagen presents its strategy for the next decade," Volkswagen Press Release, (Nov. 22, 2016), *available at* https://www.volkswagenag.com/en/news/2016/11/transform-2025.html (last visited Dec. 5, 2018) (detailing plans for implementation of Transform 2025+ in North America).

[9] *available at* https://www.volkswagen-newsroom.com/en/press-releases/volkswagen-brand-continues-to-boost-productivity-also-in-management-993 (last visited Dec. 5, 2018).

injunction analysis.

Further, even putting Volkswagen's Pact for the Future aside entirely, there is *ample* circumstantial evidence demonstrating that Volkswagen discriminated against Mr. Manlove on the basis of his age. There is abundant evidence that Volkswagen's demotion of Mr. Manlove was discriminatory. Mr. Manlove was qualified to be the Assistant Manager of In-House Logistics, as demonstrated by his exemplary seven-year employment record at Volkswagen and his extensive experience working in both logistics and the automotive industry. Pl. Decl. ¶¶ 4-7. Volkswagen has *never* attempted to claim that Mr. Manlove was unqualified for the Level 9 position. In fact, Volkswagen informed Mr. Manlove that he did excellent work and praised his "hard work and professionalism" as Assistant Manager of In-House Logistics. *See* Pl. Decl.*,* Ex. A. Despite his qualifications, only Mr. Manlove and another Assistant Manager over 50 were demoted—the younger Assistant Managers were left in their roles. Pl. Decl. ¶ 14. In fact, Volkswagen effectively *replaced* Mr. Manlove with younger employees by promoting several significantly younger employees to open Assistant Manager positions in the Logistics Department shortly before Mr. Manlove's demotion. Pl. Decl. ¶ 13; *see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (An employee can "satisfy [an] element of [his] age discrimination claim . . . by providing evidence that [he] was replaced by a younger worker."). Mr. Manlove's Manager's subsequent efforts to qualify him for advancement within the Company—and Volkswagen's resistance to those attempts—further demonstrate his qualifications as well as the Company's discriminatory intent. *See* Pl. Decl. ¶ 30.

Moreover, Mr. Manlove raises serious and substantial questions as to whether Volkswagen's rationales for demoting him are pretextual. Initially, Volkswagen claimed that Mr. Manlove was demoted for economic reasons, but this is completely incongruous with the fact that

several Specialist-level employees were *promoted* to the position of Assistant Manager in the Logistics Department just before his demotion. Pl. Decl. ¶ 13; *see Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 498 (6th Cir. 2017) ("A plaintiff can demonstrate pretext by showing that the proffered reason . . . has no basis in fact[.]"). Further, even assuming *arguendo* that there was some economic reason to transfer Mr. Manlove out of In-House Logistics, there is absolutely <u>no</u> rational economic reason that explains the decision to *demote* Mr. Manlove as well. Nor has Volkswagen even attempted to provide one, instead sweeping this critical adverse action under the rug and focusing solely on the reason for transfer, never the reason for demotion.

Volkswagen's continually shifting explanations for demoting Mr. Manlove further demonstrate pretext. *See Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 12 (6th Cir. 2010) ("Shifting justifications over time calls the credibility of those justifications into question."). First, Volkswagen claimed that Mr. Manlove was demoted for economic reasons. *See* Pl. Decl. ¶ 10. Then, in Orwellian fashion, Volkswagen claimed that Mr. Manlove was demoted and transferred in recognition of his "***hard work and professionalism***[.]" *See* Pl. Decl., Ex. A (emphasis added). Finally, Volkswagen asserted that Mr. Manlove was demoted due to an alleged "conflict" between the shift he oversaw and the other shift in Body Shop Conveyance. *See* Pl. Dec. ¶ 34. However, this most recent explanation was never conveyed directly to Mr. Manlove and was never even mentioned until Volkswagen's lawyers became involved, nearly a year after the demotion. *See id.*

There is also abundant evidence that Volkswagen is discriminating against Mr. Manlove—and other older workers—in promotion decisions. For example, Volkswagen claims to base promotions to Manager positions on whether an employee has completed the MAC. *See id.* ¶ 17. However, the Company often refuses to permit employees over the age of fifty to participate in the MAC, which it in turn uses to justify its refusal to promote them. *See id.* ¶¶ 17-18. Volkswagen

12

refused even to consider Mr. Manlove, an employee with seniority in the Logistics Department, for a Logistics Manager position allegedly because he had not completed the MAC; instead, Volkswagen gave the position to an employee in her early-thirties from the IT Department. *Id.* ¶¶ 17, 19. Further evidence of discrimination is the fact that, since announcing the Pact for the Future in November of 2016, Volkswagen has promoted several Specialist level employees, all or nearly all of which are in their thirties, to the position of Assistant Manager. *Id.* ¶ 15.

In addition, Volkswagen frequently fails to post open positions to its internal system, and has never notified Mr. Manlove about available positions for which he may be qualified. *See*, *e.g., Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000) (holding that if an employer does not advertise a position, a plaintiff may establish a prima facie case of discrimination simply by showing that "the plaintiff was passed over despite being qualified for the job[]"). On the rare occasion that a job position *is* posted to the internal system, Volkswagen has still blocked Mr. Manlove from consideration. In or around November 2017, Mr. Manlove applied to a Level 9 Product Specialist position within the Engineering and Planning Department overseeing work on production of the Atlas model. Pl. Decl. ¶¶ 21, 24. The Human Resources representative overseeing the open position informed Mr. Manlove that he should expect an interview very soon because he was an **excellent candidate** with **all the requisite skills** for the position. *Id.* ¶ 24. Indeed, a former colleague from the Logistics Department had recently filled the exact same position overseeing work on production of the Passat model. *Id.* ¶ 21. However, Mr. Manlove was *never even asked to interview* for the position. *Id.* ¶ 26. Instead, the Human Resources representative informed Mr. Manlove only that management had decided to go in a "different direction." *Id.*

Finally, Volkswagen has limited Mr. Manlove's ability to apply and be considered for promotions by designating his advancement status as "remain in position." *See id*. ¶¶ 29-31. As recounted above, Volkswagen claimed this status was simply a "mistake." *See* Pl. Decl., Ex. B. However, Mr. Manlove again raises substantial questions as to whether Volkswagen's rationale for blocking him from applying or being considered for promotions is pretextual. When Mr. Manlove's Manager pushed back against the change to his promotion status, thus putting Volkswagen on notice of the alleged "mistake," Human Resources **refused** to make the correction. *See* Pl. Decl. ¶ 30. Only *after* Plaintiff informed Volkswagen that he had retained counsel did it claim that a "mistake" had been made. *Id*. ¶ 32. Again, such shifting justifications raise substantial questions about whether the rationales concocted by Volkswagen's lawyers are pretextual.

Mr. Manlove has provided direct *and* circumstantial evidence of discrimination that raise serious and substantial questions going to the merits of his age discrimination claims, as well as those of the class members given the adoption of a Company-wide policy of age discrimination. Based on this, Mr. Manlove has established that he and the proposed class are "likely to succeed on the merits" for the purposes of granting this preliminary injunction.

### B. Absent an Injunction, Volkswagen's Actions Will Cause Irreparable Harm

Mr. Manlove and the class members will experience "irreparable harm" unless the Court enters a preliminary injunction. Volkswagen will remain free to carry out its ongoing plan to target and phase out older workers. Because of their age, Plaintiff and the class members will endure mistreatment and indignities in the workplace that will affect their daily well-being and cause significant emotional and mental distress. Being deliberately relegated to lower positions with lesser opportunities will also permanently damage their careers. Thus, they will "suffer 'actual and imminent' harm," *Abney v. Amgen, Inc*., 443 F.3d 540, 552 (6th Cir. 2006), that is "not fully

compensable by monetary damages[,]" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

### 1. Demoting Class Members Such as Plaintiff Manlove and Preventing them from Competing for Promotions Has and Will Continue to Cause Irreparable Harm

Plaintiff Manlove asks the Court to forestall implementation of Volkswagen's Pact for the Future, including by precluding the Company from taking further actions to curtail his and the class members' careers on account of their age. As part of this relief, the Court should remove the barriers Volkswagen has imposed to Mr. Manlove's promotion and advancement and allow him to compete on a fair and equal playing field. For example, the Court should direct Volkswagen to change Mr. Manlove's internal advancement status from "remain in position" to "vertical" for both the one-year *and* three-year period and enjoin it from relying on the MAC to prevent him from applying to and being considered for positions for which he is otherwise qualified. Finally, the Court should order Mr. Manlove to be reinstated into his former role as Level 9 Assistant Manager pending the resolution of his claim on the merits. *See, e.g.*, *Becton*, 48 F. Supp. 2d at 753 (W.D. Tenn. 1999) ("Thus, if the court finds that a preliminary injunction is appropriate in this case, there is nothing about the nature of such a remedy that would preclude the court from ordering Plaintiff reinstated to her former position, if doing so would preserve the court's ability to issue a meaningful decision.").

Mr. Manlove spent seven years building his career and tenure at Volkswagen, working his way up from the position of Supervisor to the management ranks. Since his demotion, however, Mr. Manlove has been relegated once again to his entry Level 6 Supervisor title. And recently, since filing this lawsuit, has been assigned to the most physically and mentally demanding line in the Department. *See* Pl. Decl. ¶¶ 38-40. Mr. Manlove has no hope of finding a less taxing or more

fulfilling position without Court intervention, as Volkswagen has made it impossible for him to compete for any promotions to a different position. As far as Mr. Manlove is aware, his three-year internal advancement status is still "remain in position"—meaning, of course, that he is unable to advance outside of his current role, despite his skills and qualifications, for the next three years. *Id.* ¶ 32. Further, Volkswagen's refusal to post internal open positions so that all employees are afforded an opportunity to apply, and discriminatory use of the MAC program, has and will continue to prevent Mr. Manlove from competing for Manager positions, even if he is otherwise qualified for the role. *Id.* ¶¶ 17-18, 23.

Volkswagen's adverse actions against Mr. Manlove have and will continue to result in the loss of critical skill and leadership experience. As a Level 9 Assistant Manager, Mr. Manlove was responsible for overseeing several projects at a time, developing and negotiating third-party projects and logistics, working on cross-functional teams, training supervisors, and managing approximately one-hundred (100) people. Pl. Decl. ¶ 48. However, as a Level 6 Supervisor, Mr. Manlove is primarily tasked with the day-to-day management of a team of approximately twenty-seven (27) individuals on the production line. *Id.* This drastic reduction in responsibilities, loss of skill, and change in title will decrease Mr. Manlove's ability to compete for promotions within Volkswagen and will reduce his future marketability, ultimately making him less attractive for positions in other companies. The irreparable harm experienced will be compounded the longer that Mr. Manlove is forced to languish at Level 6.

It is well-established in this Circuit that these harms—e.g., delayed promotions and loss of job opportunities—constitute irreparable injury for purposes of preliminary injunctive relief. "Without the preliminary injunction, lost work experience and the opportunity to compete for promotions would be actual and imminent . . . . Back pay could remedy Plaintiffs' injuries due to

lost income alone, **but the loss of experience and chances to compete for promotions are not easily valued**." *Johnson v. City of Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011) (emphasis added) (internal citations omitted); *see also Becton*, 48 F. Supp. 2d at 763 ("the court finds that the harm Plaintiff asserts is a more particularized harm—future employment marketability. The court is persuaded that Plaintiff has adequately demonstrated irreparable harm as to this issue."); *Howe v. City of Akron*, 723 F.3d 651, 662 (6th Cir. 2013) ("[W]ithout promotions, Plaintiffs will be unable to gain experience and unable to seek the next rank....**Plaintiffs have shown that substantially delayed promotions would cause irreparable harm to their careers**") (emphasis added); *E. E. O. C. v. Chrysler Corp.*, 546 F. Supp. 54, 71 (E.D. Mich. 1982), *opinion modified and reinstated*, No. 81-72347, 1982 WL 406 (E.D. Mich. Sept. 3, 1982), *and aff'd*, 733 F.2d 1183 (6th Cir. 1984) (finding "a deterioration of [plaintiffs'] work skills through non-use and loss of currency in their area of expertise" to constitute irreparable injury).[10]

---

[10] Courts in other Circuits agree that the loss of job opportunities can constitute irreparable harm. *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (The "loss of opportunity to pursue one's chosen profession constitutes irreparable harm."), *cert. denied*, 138 S. Ct. 1279 (2018); *Ritter v. State of Oklahoma*, No. CIV-16-0438-HE, 2016 WL 2659620, at *3 (W.D. Okla. May 6, 2016) (finding irreparable harm because the "loss of educational and career opportunities" would not be "readily compensable in money damages[]"); *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 707 F. Supp. 2d 520, 543 (D.N.J. 2010) (finding the loss of on the job "training and experience[]" constituted irreparable harm); *Bonds v. Heyman*, 950 F. Supp. 1202, 1215 (D.D.C. 1997) (determining that a 58-year-old plaintiff would suffer irreparable harm if she were terminated because "it is unlikely she could ever find work approaching what she now does, if she could find work at all[]"); *Gately v. Com. of Mass.*, 2 F.3d 1221, 1234 (1st Cir. 1993) (affirming district court's finding of irreparable harm where employees nearing retirement would either "lose their twilight years of employment[]" or have their "ability to stay in touch with new developments[]" impaired; *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 709-710 (9th Cir. 1988) (finding plaintiff who was reassigned to a job he found "distasteful" and that did "not utilize his skills, training, or experience[]" would suffer irreparable harm if he were not reinstated to his original job because his injury was "emotional and psychological—and immediate"); *Gavagan v. Danbury Civil Serv. Comm'n*, No. B-82-307, 1983 WL 510, at *3 (D. Conn. Feb. 4, 1983) (finding "the loss of presently existing employment opportunities, with the concomitant loss of possible on-the-job experience and seniority," constituted irreparable injury); *Oshiver v. Court of Common Pleas, Court Admin.*, 469 F. Supp. 645, 653 (E.D. Pa. 1979) (finding plaintiff demonstrated irreparable harm because she "presented credible evidence of nervous and emotional problems brought on by her dismissal[]").

17

Plaintiff has already lost certain job opportunities as a result of his demotion, internal advancement status, and Volkswagen's MAC program, and he will continue to lose future opportunities absent a preliminary injunction. *See Brinkley v. Bd. of Comm'rs of Franklin Cty., Ohio*, No. 2:12-CV-00469, 2013 WL 394158, at *7 (S.D. Ohio Jan. 29, 2013) ("Based on the current record, the Court finds that Plaintiff has made a sufficient showing of irreparable injury . . . it is uncontested that Plaintiff has lost employment opportunities including chances for promotion, open assignments, and training. From this information, it is natural to infer that it is likely Plaintiff will continue to lose such opportunities if [he] does not receive immediate relief."). Because Mr. Manlove has shown irreparable injury on behalf of himself and similarly-situated class members, this factor militates in favor of granting a preliminary injunction.

### 2. Any Further Adverse Actions Pursuant to Pact for the Future Will Cause Irreparable Harm

More broadly, the Court should preserve the *status quo* during the pendency of this litigation by enjoining Volkswagen from taking any adverse action against Mr. Manlove and other class members pursuant to "Pact for the Future." The entire goal and purpose of the Pact is to push older workers out of the Company, through whatever combination of adverse actions Volkswagen deems necessary. In Mr. Manlove's case, Volkswagen has demoted him to a physically demanding role, threatened to reduce his salary, and prevented him from rising within the Company. Since Mr. Manlove filed the present action, he has been subjected to intense and unreasonable scrutiny, including critical remarks that he is to blame for the inefficiency of established processes in the Assembly Department and unfounded accusations that he is not "engaged" or "motivated" to do his job. Pl. Decl. ¶¶ 45-46. Mr. Manlove has also been subjected to irrational deviations from the standard procedure for requesting paid time off ("PTO") that seem only to apply to him, including

18

the revocation of holiday PTO that had been on the calendar for months. *Id*. ¶ 45. These underhanded tactics are all in the pursuit of pushing him out of the Company.

Volkswagen's actions are likely to result in Mr. Manlove's discharge, either direct or constructive. Such a discharge would not occur in isolation but would be part and parcel of Volkswagen's Pact to phase out class members on a mass basis. Although a temporary loss of income generally does not constitute irreparable injury, "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson v. Murray*, 415 U.S. 61, 90 n. 68 (1974).

Considering Volkswagen's global policy of discrimination, and the very purposes of the ADEA, this situation is one in which irreparable injury must be found. In amending the ADEA to prohibit "involuntary retirement," Congress found that:

> Substantial evidence exists that mandatory retirement may have a severe deteriorative impact on the physical and psychological health of older individuals. Dr. Albert Gunn, assistant director for hospitals at the M.D. Anderson Hospital Rehabilitation Center, University of Texas in Houston, testified that mandatory retirement based on age often subjects workers to sudden and sometimes strong negative reactions that affect mental attitude, health and perhaps even longevity. It detracts from the quality of life by taking away a sense of fulfillment and self-sufficiency that many workers find can only be realized from productive employment. The American Medical Association opposes mandatory retirement. In its view, enforced idleness robs those affected of the will to live full, well-rounded lives, deprives them of opportunities for rewarding physical and mental activity.

*E. E. O. C. v. Chrysler Corp.*, 546 F. Supp. at 70 (citing 1978 U.S. Code Cong. & Adm. News 507). Based on these effects, the Sixth Circuit has agreed that "**post-trial relief is inadequate to compensate claimants for this type of injury** when it may be halted altogether by reinstatement." *Id*. at 70, *aff'd*, 733 F.2d 1183 (6th Cir. 1984) (emphasis added). This is consistent with general law that emotional distress will often qualify as irreparable harm in employment cases, as well as in other contexts. *See, e.g.*, *Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015)

19

(collecting cases) (emotional distress and injury qualifies as irreparable harm).[11] In this case, Mr. Manlove is already experiencing many of these symptoms as a result of his demotion; if he is eventually discharged pursuant to Volkswagen's Pact for the Future, increased and worsening symptoms are imminent.

The Court should therefore enjoin Volkswagen from taking any adverse actions against Mr. Manlove and other class members pursuant to the Pact for the Future while their claims of age discrimination are pending.[12]

### C. A Preliminary Injunction Will Not Harm Others and is in the Public Interest

The third and fourth factors to consider in determining whether a preliminary injunction is appropriate are whether issuance of a preliminary injunction would cause substantial harm to others; and whether the public interest would be served by issuance of a preliminary injunction. *Leary*, 228 F.3d 729 at 736. Both factors weigh in favor of granting the preliminary injunction.

First, granting the requested preliminary injunction—prohibiting Volkswagen from carrying out its plans to engage in illegal age discrimination—would not cause substantial harm to anyone. Any possible harm that Volkswagen may claim is simply a result of its own unlawful actions. *See Howe,* 723 F.3d at 663 ("The City's logic would force this Court to conclude that practically every [preliminary injunction of this nature] causes substantial harm, since the number of vacancies in an organization is almost always finite and additional qualified applicants usually exist."). Further, any possible hardship that Volkswagen may claim is exceedingly less than the

---

[11] *See also, e.g.*, *Heineke v. Santa Clara Univ.*, 736 Fed. Appx. 622, 624 (9th Cir. 2018) (emotional distress may represent irreparable harm in employment cases); *United Steelworkers of Am., AFL-CIO v. Textron. Inc.*, 836 F.2d 6, 9 (1st Cir. 1987) (threats of "serious emotional harm . . . can support a finding of irreparable harm[]"); *Nosworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015) ("Emotional distress, anxiety, depression, and other psychological problems can constitute irreparable injury.").

[12] To the extent Volkswagen disputes the implementation of the Pact for the Future in the United States, the Court should allow Plaintiff to conduct limited discovery and hold an evidentiary hearing regarding Plaintiff's Motion for Preliminary Injunction.

harm that has been and will continue to be experienced by Mr. Manlove and similarly-situated older employees. *See, e.g. E. E. O. C. v. Chrysler Corp*., 546 F. Supp. at 71 ("[T]he hardship of reinstating less than 40 employees into a total work force of 16,000 appears less than the individual claimants will continue to suffer in their forced retirements"); *D.J. Miller & Assocs., Inc. v. Ohio Dep't of Admin. Servs*., 115 F. Supp. 2d 872, 884 (S.D. Ohio 2000) ("The Court agrees that the harm suffered by the victim of discrimination will almost always outweigh the inconvenience to others").

Second, the public interest would be served by granting this injunction. Mr. Manlove has made substantiated claims of age discrimination, and it is undisputed that there is a public interest in combatting discrimination. *See, e.g.*, *Junhe Qiu v. Univ. of Cincinnati*, No. 1:18-CV-634, 2018 WL 4496304, at *9 (S.D. Ohio Sept. 19, 2018) ("[T]here is a strong public interest in the protection of constitutional rights and combatting discrimination[.]"); *D.J. Miller & Assocs., Inc.*, 115 F. Supp. 2d at 884 ("[I]t is beyond responsible debate that the public interest is served when core societal values . . . are vindicated."); *E.E.O.C. v. City of Ecorse*, No. 81-71204, 1981 WL 217, at *1 (E.D. Mich. June 12, 1981) (finding that "[t]he public interest, which has been declared by Congress[,] will be served by the issuance of a preliminary injunction" where there was an apparent violation of the ADEA).

V.    **Conclusion**

Mr. Manlove makes a strong showing that he and the members of the prospective class have suffered age discrimination under the ADEA and the THRA and will endure continued and worsening discrimination unless the Court enters an injunction. If Volkswagen is allowed to continue its adverse activity, Mr. Manlove and his similarly-situated peers will suffer irreparable harm in the form of lost employment opportunities, lost skill, delayed promotions, and increased mental health problems. Meanwhile, Volkswagen will not suffer any real hardship. Accordingly,

21

this Court should enter the requested preliminary injunction to restore and maintain the status quo.


Dated: December 6, 2018                                    Respectfully submitted,


                                                           s/*Kevin Sharp*

                                                           Kevin H. Sharp (TN BPR 016287)
                                                           Leigh Anne St. Charles (TN BPR 036945)
                                                           **SANFORD HEISLER SHARP, LLP**
                                                           611 Commerce Street, Suite 3100
                                                           Nashville, Tennessee 37203
                                                           Telephone: (615) 434-7000
                                                           Facsimile: (615) 434-7020
                                                           ksharp@sanfordheisler.com
                                                           lstcharles@sanfordheisler.com

                                                           Andrew Melzer (*pro hac vice*)
                                                           **Sanford Heisler Sharp, LLP**
                                                           1350 Avenue of the Americas, 31st Floor
                                                           New York, NY 10019
                                                           Telephone:(646) 402-5657
                                                           Facsimile: (646) 402-5651
                                                           amelzer@sanfordheisler.com

                                                           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 6, 2018, a true and correct copy of the foregoing document has been furnished to the following individuals via the Court's ECF System:

Bradford G. Harvey
Charles B. Lee
Megan Welton
Miller & Martin, PLLC
(Chattanooga)
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, TN 37402
423-756-6600
bharvey@millermartin.com
clee@millermartin.com
megan.welton@millermartin.com

*Attorneys for Defendants*
*Volkswagen Aktiengesellschaft,*
*Volkswagen Group of America, Inc.,*
*and Volkswagen Group of America*
*Chattanooga Operations, LLC*

*s/Kevin Sharp*
**Kevin H. Sharp** (TN BPR 16287)
SANFORD HEISLER SHARP, LLP
611 Commerce St., Ste. 3100
Nashville, TN 37203
(615) 434-7001
ksharp@sanfordheisler.com

23