# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

JONATHAN MANLOVE, individually and ) 
on behalf of others similarly situated, )      Case No. 1:18-cv-145
                               )
        *Plaintiff*, )      Judge Travis R. McDonough
                               )
v. )      Magistrate Judge Christopher H. Steger
                               )
VOLKSWAGEN ) 
AKTIENGESELLSCHAFT *et al.*, )
                               )
        *Defendants*. )

---

## MEMORANDUM OPINION

---

Before the Court is a motion to dismiss for lack of personal jurisdiction and for insufficient service of process filed by Defendant Volkswagen Aktiengesellschaft ("VWAG") (Doc. 31). For the following reasons, VWAG's motion to dismiss for lack of personal jurisdiction and insufficient service of process will be **DENIED**.

### I. BACKGROUND

VWAG, a German corporation with its principal place of business in Wolfsburg, Germany, is an automobile manufacturer that operates production plants throughout the world. (Doc. 12, at 6–7.) Volkswagen Group of America, Inc. ("Volkswagen America") is a New Jersey corporation with its principal place of business in Virginia and a wholly-owned subsidiary of VWAG. (*Id.* at 7.) Volkswagen America is the "operational headquarters for [VWAG's] presence in North America." (*Id.*) Volkswagen Group of America Chattanooga Operations, LLC ("Volkswagen Chattanooga") is a Tennessee limited liability company with its principal place of business in Virginia and a wholly-owned subsidiary of Volkswagen America. (*Id.*)

Volkswagen Chattanooga "operates the Volkswagen Chattanooga Assembly Plant in Chattanooga, Tennessee." (*Id.*) Although Plaintiff Jonathan Manlove is an employee of Volkswagen Chattanooga, he alleges that:

> [VWAG] exerts control over the daily affairs of Volkswagen Chattanooga, including the labor activities and personnel decisions of its subsidiary employees, through: daily production plans directing Chattanooga worker activities and labor productivity set by and sent by German management; requiring weekly reports sent from Chattanooga to Germany so that [VWAG] employees can set worker activity and labor production; regular meetings held by [VWAG] employees in Chattanooga to set directly personnel work activities and production; directing operating hours of the Chattanooga facility, including plant shut-downs; maintaining a common international standards organization implemented in Chattanooga through regular audits conducted by [VWAG] employees; directing the method of promotions for workers in Chattanooga, including through the elimination of the management assessment centers; and maintaining a common internal employee platform through which open positions and job transfers are conducted[.]

(*Id*. at 4–6.)

In November 2016, VWAG announced its "Pact for the Future," a campaign Manlove alleges was designed to eliminate older workers from VWAG's and its subsidiaries' workforces. (*Id*. at 9–10.) Specifically, Manlove alleges that the "Pact for the Future" constitutes "a global policy of eliminating older workers and replacing them with younger ones," in part, by "purging older workers from its management ranks." (*Id.*) Consistent with VWAG's Pact for the Future, Manlove, a fifty-three-year-old, alleges that, in 2017, Volkswagen Chattanooga denied him a promotion and later demoted him because of his age. (*Id*. at 13–16.) Manlove specifically alleges that his demotion was the result of being "displaced by younger workers as part of [VWAG's] Pact for the Future." (*Id*. at 15.)

Manlove initiated the present action on June 29, 2018 (Doc. 1), and filed an amended complaint on September 18, 2018 (Doc. 12). In his amended complaint, Manlove asserts class- and collective-action claims against VWAG, Volkswagen Chattanooga, and Volkswagen

America for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 621 *et seq*., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101

*et seq*., and seeks injunctive relief on behalf of himself and other "employees who have been

affected." (*See generally id*.)

On September 26, 2018, Manlove filed proof of service stating that he effected service of

process on VWAG through its wholly-owned subsidiary, Volkswagen America, pursuant to

Tennessee Rule of Civil Procedure 4A(3). (Doc. 19.) On October 31, 2018, VWAG,

Volkswagen America, and Volkswagen Chattanooga moved to dismiss Manlove's claims,

arguing that the parties' arbitration agreement required arbitration of Manlove's claims. (Docs.

29, 31.) In VWAG's motion to compel arbitration, it alternatively argued that the Court should

dismiss Manlove's claims against it because the Court lacks personal jurisdiction over it and

because Manlove failed to properly effectuate service of process. (*See* Doc. 31.) On January 11,

2019, the Court entered an order finding that, under the terms of the parties' arbitration

agreement, an arbitrator had to decide the threshold issue of arbitrability. (Doc. 57.) The Court

stayed this matter pending the arbitrator's decision and declined to rule on VWAG's motion to

dismiss for lack of personal jurisdiction and for insufficient service of process. (*Id*. at 7.) On

February 25, 2019, the arbitrator entered an order finding that Manlove's claims were not

arbitrable. (Doc. 65.) Based on the arbitrator's finding, VWAG's motion to dismiss for lack of

personal jurisdiction and for insufficient service of process is now ripe for the Court's review.

## II.    ANALYSIS

### A. *Personal Jurisdiction*

In the context of a motion to dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air*

*Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  In determining whether the plaintiff has met his burden, the Court must construe the pleadings in the light most favorable to the plaintiff.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012).  When the district court resolves the motion without an evidentiary hearing, the plaintiff's burden is "relatively slight," and a *prima facie* showing of jurisdiction will suffice.  *Id.*

"When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016).  Tennessee's long-arm statute, Tennessee Code Annotated § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by the Due Process Clause.  *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645–46 (Tenn. 2009); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).  When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process.  *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

"Due process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'"  *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)).  Personal jurisdiction can take one of two forms: general or specific.  *Id.*  "General jurisdiction is found where contacts are so continuous and systematic as to render a foreign defendant essentially at home in the forum State."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal

alterations and quotation marks omitted)).  Specific jurisdiction, on the other hand, "depends on

an affiliatio[n] between the forum and the underlying controversy, principally, activity or an

occurrence that takes place in the forum State and is therefore subject to the State's regulation."

*Id.* (quoting *Goodyear*, 564 U.S. at 919).

VWAG first argues that the Court should dismiss Manlove's claims against it because the

Court lacks specific jurisdiction over it.  The Sixth Circuit has developed a three-part test to

determine whether specific jurisdiction exists over a particular defendant.  *Schneider*, 669 F.3d at

701.  Under that test, the Court must find:

> (1) purposeful availment "of the privilege of acting in the forum state or causing a
> consequence in the forum state," (2) a "cause of action . . . aris[ing] from
> activities" in the state, and (3) a "substantial enough connection with the forum
> state to make the exercise of jurisdiction over the defendant reasonable."

*Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In this case, VWAG does not dispute that it has purposefully availed itself of the

privilege of acting in Tennessee or that it has a substantial enough connection with Tennessee to

make the exercise of jurisdiction over it reasonable; rather, it argues the Court lacks specific

jurisdiction over it because Manlove's allegations are insufficient to establish that his claims

arise from VWAG's contacts with Tennessee.  (*See* Doc. 32, at 10–14.)  Although VWAG does

not expressly dispute the first and third prongs of the specific-jurisdiction test, the Court will

nonetheless address each factor to determine whether exercise of specific jurisdiction over

VWAG is consistent with due process.

"The purposeful availment requirement ensures that a defendant will not be haled into a

jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral

activity of another party or a third person."  *Id.*  The emphasis is on "whether the defendant has

engaged in some overt actions connecting the defendant with the forum state."  *Beydoun v.*

*Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (quoting *Fortis Corp. Ins. v. Vikeri Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). For a court to retain jurisdiction, the connection "must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In this case, the allegations in Manlove's amended complaint, viewed in the light most favorable to him, are sufficient to satisfy his "relatively slight" burden of establishing that VWAG purposefully availed itself of the privilege of acting in Tennessee. Manlove specifically alleges that VWAG "exerts control over the daily affairs of Volkswagen Chattanooga," including its labor activities and personnel decisions. (Doc. 12, at 4–5.) Manlove further alleges that VWAG is responsible for, among other things: (1) daily production plans directing Chattanooga worker activities; (2) setting Chattanooga worker activity and production goals; and (3) "directing the method of promotions for workers in Chattanooga." (*Id.*) Manlove's allegations that VWAG exerts control over the daily affairs of Volkswagen Chattanooga are therefore sufficient to establish that VWAG has engaged in overt actions connecting it with Tennessee and that it purposefully availed itself of the privilege of acting in Tennessee.[1]

Having sufficiently alleged that VWAG purposefully availed itself of the privilege of acting in Tennessee, Manlove must next demonstrate that his claims arise out of VWAG's

---

[1] VWAG disputes these allegations but offers no countervailing evidence suggesting that VWAG does not exert control over Volkswagen Chattanooga's daily affairs. *See Donitos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 345 (5th Cir. 2014) (explaining that when the Court decides the personal jurisdiction question without any evidence or an evidentiary hearing, it must "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts"). The absence of such evidence is not surprising, as VWAG acknowledged in open court that it directly influences how Volkswagen Chattanooga operates. (Doc. 82, at 57–61.)

activities in Tennessee. To satisfy the second prong, the plaintiff must demonstrate that his cause of action was "proximately caused by the defendant's contacts with the forum state." *Beydoun*, 768 F.3d at 507–08. The Sixth Circuit instructs that this is a "lenient standard" and that "the cause of action need not 'formally' arise from defendant's contacts." *Air Prod. & Controls, Inc.*, 503 F.3d at 553. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Beydoun*, 768 F.3d at 507.

VWAG argues that Manlove has not demonstrated that his claims arise out of VWAG's activities in Tennessee, because VWAG's Pact for the Future was established at its German headquarters—not in Tennessee—and because Manlove does not allege that a VWAG employee exercised control over or participated in decisions related to his employment. (Doc. 32, at 12–13.) As such, VWAG asserts that Manlove's claims for violations of the ADEA and THRA cannot arise out of any specific conduct VWAG directed toward Tennessee.

Even without allegations that VWAG employees directly participated in decisions related specifically to Manlove's employment, Manlove's amended complaint sufficiently alleges facts demonstrating that his claims arise out of VWAG's activities in Tennessee. Manlove alleges that VWAG, through its "Pact for the Future," instituted a "global policy" aimed at "eliminating older workers and replacing them with younger ones," in part, by "purging older workers from its management ranks." (Doc. 12, at 9–10.) Manlove then alleges that Volkswagen Chattanooga denied him a promotion and, ultimately, demoted him as part of VWAG's Pact for the Future. (*Id*. at 13–16.) Indeed, Manlove specifically alleges that he was "simply displaced by younger workers as part of [VWAG's] Pact for the Future." (*Id*. at 15.) Combined with his allegations that VWAG exercised control over Volkswagen Chattanooga's daily affairs, including

establishing employment procedures and "directing the method of promotions for workers in Chattanooga" (*id*. at 3–4), Manlove has met his "relatively slight" burden to show that his claims arise out of VWAG's implementation of its Pact for the Future at Volkswagen Chattanooga.

The third prong—reasonableness—requires consideration of three factors:  the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief.  *Air Prod. & Controls, Inc.*, 503 F.3d at 554.  However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id*. (quoting Burger *King Corp.*, 471 U.S. at 477).  Additionally, when the first two criteria are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria."  *Id*. (internal quotations omitted).

Here, Manlove has satisfied the first two criteria of the specific-jurisdiction analysis, and VWAG does not attempt to rebut the inference that exercising jurisdiction over it is reasonable under the circumstances.  Accordingly, Manlove has satisfied his burden to demonstrate that VWAG has a substantial enough connection to Tennessee such that it is reasonable for the Court to exercise jurisdiction over it.

For the foregoing reasons, Manlove has satisfied his burden of alleging facts demonstrating that the Court possesses specific jurisdiction over VWAG.  Accordingly, the Court will **DENY** VWAG's motion to dismiss for lack of personal jurisdiction.[2]

---

[2] Because the Court finds that it has specific personal jurisdiction over VWAG, it need not determine whether it has general personal jurisdiction over it.

### B. Service of Process

VWAG next argues that the Court should dismiss Manlove's claims against it for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. The plaintiff "bears the burden of perfecting service of process and showing that proper service was made." *Sawyer v. Lexington-Fayette Urban Cty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).  Under Rule 4 of the Federal Rules of Civil Procedure, a plaintiff can effectuate service on a foreign corporation by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  Tennessee Rule of Civil Procedure 4A provides:

> Service upon (1) an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, (2) a corporation, or (3) a partnership or other unincorporated association (including a limited liability company) may be effected in a place not within any judicial district of the United States:
>
> . . .
>
> > (3) in the case of a corporation, by service as provided in 4.04(4) upon any corporation that has acted as the corporate defendant's agent in relation to the matter that is the subject of the litigation or the stock of which is wholly owned by the corporate defendant.

Under Tennessee Rule of Civil Procedure 4.04(4), a foreign corporation doing business in Tennessee may be served:

> by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.

Seizing on Rule 4A's language that service of a foreign corporation "may be effected in any place not within any judicial district of the United States," and asserting that such language must be strictly construed, VWAG argues that Manlove's attempted service of VWAG through

Volkswagen America's registered agent in Tennessee was insufficient because it occurred within the United States.  (Doc. 32, at 17–21.)  Effectively, VWAG argues that the plain language of Rule 4A(3) requires that service of a foreign corporation through an agent or wholly-owned subsidiary must occur outside of the United States.  (*See id.*)

VWAG's proposed interpretation of Rule 4A, however, is not the only interpretation supported by the plain language of the rule.  Although Tennessee state courts have not had occasion to rule on the meaning of Rule 4A, an alternate interpretation supported by the plain language of the rule, and one that is further supported by the advisory-commission comments to the rule, is that Rule 4A specifies the manners in which a plaintiff can effectuate service on an individual, corporation, or partnership or other unincorporated association located "in a place not within any judicial district of the United States."  Indeed, the advisory-commission comments to Rule 4A expressly state that the purpose of Rule 4A(3) is to avoid the inconvenience of service in a foreign country:

> Subpart 4A(3) provides specific direction to the courts on a question that has not yet been addressed by Tennessee law. The provision establishes that a subsidiary corporation that is simply the alter ego of a foreign corporation may be the agent for service of process under appropriate circumstances. Given the hostility to litigation in American courts that may be found in some foreign countries, such a provision will allow an attorney in some cases to avoid the expense and inconvenience of having to attempt service in a foreign country.

Tenn. R. Civ. P. 4A advisory commission comment.  VWAG's proposed interpretation of the rule is one that would lead to the absurd result of requiring plaintiffs seeking to avoid the inconvenience of service in a foreign country to serve foreign corporations through their local subsidiaries—but only if those local subsidiaries can be served in foreign countries.  *See Meyers v. First Tenn. Bank, N.A.*, 503 S.W.3d 365, 373 (Tenn. Ct. App. 2016) ("[T]he rules of statutory construction direct courts not to apply a particular interpretation . . . if that interpretation would yield an absurd result." (internal quotations omitted)).  Based on the text of Rule 4A and the

accompanying advisory-commission comments, the Court finds that Rule 4A permits a plaintiff to effectuate service on a foreign corporation by serving a registered agent of the foreign corporation's wholly-owned subsidiary located within the United States.

Finally, VWAG argues that the Court should dismiss Manlove's claims against it because he has not demonstrated that Volkswagen America is VWAG's agent and that it is authorized to accept service on VWAG's behalf. (Doc. 32, at 21–22.) As stated above, Tennessee Rule of Civil Procedure 4A(3) permits substituted service on a foreign corporation by serving "any corporation that has acted as the corporate defendant's agent in relation to the matter that is the subject of the litigation or the stock of which is wholly owned by the corporate defendant." Manlove's amended complaint expressly alleges that Volkswagen America is a wholly-owned subsidiary of VWAG. (Doc. 12, at 7.) Additionally, Manlove's amended complaint alleges that VWAG shares a unity of interest with Volkswagen America such that Volkswagen America is a mere instrumentality of VWAG. (*Id*. at 3–6.) In support of this allegation, Manlove's amended complaint further alleges, among other things, that: (1) "[VWAG] maintains the Volkswagen North American Region, which operates under the Volkswagen AG board structure and is responsible for aligning all regional activities of the Volkswagen Group . . . including, among other areas, human resources, communication, IT, sales, marking, and product development"; (2) "[VWAG] and [Volkswagen America] share common board members"; (3) "[VWAG] maintains a common internal human resources management system known as SAP across [VWAG], [Volkswagen America], and Volkswagen Chattanooga" and "Defendants maintain a unified set of human resource, performance evaluation, and compensation policies"; and (4) [VWAG] considers its subsidiaries, including [Volkswagen America] and Volkswagen Chattanooga, to fall under the umbrella of the 'Volkswagen Group' . . . [and] maintains a set of

financial records for the entire 'Volkswagen Group.'" (*Id.*) Without any evidence in the record suggesting that these are inaccurate allegations, the Court finds that Manlove has properly served VWAG through Volkswagen America by complying with the requirements of Tennessee Rule of Civil Procedure 4A(3). Accordingly, the Court will **DENY** VWAG's motion to dismiss for insufficient service of process.

## III. CONCLUSION

For the reasons stated herein, VWAG's motion to dismiss for lack of personal jurisdiction and insufficient service of process (Doc. 31) is **DENIED**.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**