# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| JONATHAN MANLOVE, individually and on behalf of others similarly situated, | )<br>)   Case No. 1:18-cv-145<br>) |
| *Plaintiffs*, | )   Judge Travis R. McDonough<br>) |
| v. | )   Magistrate Judge Christopher H. Steger<br>) |
| VOLKSWAGEN AKTIENGESELLSCHAFT et al., | )<br>)<br>) |
| *Defendants*. | ) |

## MEMORANDUM OPINION

Before the Court is Defendants' (collectively, "Volkswagen") motion for partial judgment on the pleadings as to Plaintiff Jonathan Manlove's class-action claims under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, and collective-action claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, or, alternatively, motion to strike the class- and collective-action allegations from the complaint (Doc. 88).[1] For the following reasons, the Court will **DENY** Volkswagen's motion.

---

[1] Also before the Court is Volkswagen's motion for oral argument (Doc. 96) on its motion for partial judgment on the pleadings or, alternatively, to strike the class and collective-action allegations. The Court previously found that oral argument on Manlove's motion for conditional collective-action certification was unnecessary. (Doc. 100.) Oral argument on Volkswagen's instant motion is similarly unnecessary. Therefore, the Court will **DENY** Volkswagen's motion for oral argument (Doc. 96).

I.  **BACKGROUND**

The following facts, alleged in Plaintiff's amended complaint (Doc. 12), are accepted as true for the purposes of this motion.[2]  Volkswagen Aktiengesellschaft ("Volkswagen AG"), a German corporation, manufactures automobiles at production plants throughout the world.  (*Id*. at 6–7.)  Volkswagen Group of America, Inc. ("Volkswagen America"), a wholly-owned subsidiary of Volkswagen AG, is the "operational headquarters for [its] presence in North America."  (*Id*. at 7.)  Volkswagen Group of America Chattanooga Operations, LLC ("Volkswagen Chattanooga") is a wholly-owned subsidiary of Volkswagen America that "operates the Volkswagen Chattanooga Assembly Plant in Chattanooga, Tennessee."  (*Id*.)

Volkswagen AG "shares common employees" with Volkswagen Chattanooga, as well as "a unified set of human resource, performance evaluation, and compensation policies" through an internal management system.  (*Id.* at 4.)  Volkswagen AG also "direct[s] the method of promotion for workers in Chattanooga, including through the elimination of the management assessment centers" and "maintain[s] a common internal employee platform through which open positions and job transfers are conducted."  (*Id.* at 5–6.)  Volkswagen AG holds "regular meetings in Chattanooga to set directly personnel work activities and production."  (*Id.* at 5.)

In November 2016, "Volkswagen AG Brand Chief" Dr. Herbert Diess announced a rebranding effort known as "TRANSFORM 2025+" and a new global policy known as "Pact for

---

[2] The amended complaint refers to several Volkswagen brand press releases.  (*See generally* Doc. 12.)  Some of the press releases, as well as other documents referred to in the complaint, have been filed in connection with other motions in this case.  (*See* Docs. 43-1, 43-2, 74-1.)  "[D]ocuments . . . are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim."  *Berrylane Trading, Inc. v. Transp. Ins. Co.*, 754 F. App'x 370, 378 n.2 (6th Cir. 2018); *see, e.g.*, *Twombly*, 550 U.S. 544, 578 (2007) (noting that the court was "entitled to take notice of the full contents of the published articles referenced in the complaint").  Volkswagen agrees that the Court may consider the press releases in ruling on the instant motion.  (Doc. 93, at 12.)  Accordingly, the Court includes here Manlove's quotations from Volkswagen's press releases and e-mails, as detailed in the complaint.

the Future" (the "Pact"), which would "focus on . . . 'significant improvements in efficiency and productivity.'" (*Id.* at 9–10.) According to Volkswagen, it planned to achieve increased efficiency through a combination of early retirement and "natural fluctuations." (*Id.* at 2, 10.) Additionally, Volkswagen explained that implementing the Pact would include the elimination of 30,000 jobs globally, including 7,000 outside Germany. (*Id.* at 12.) Dr. Karlheinz Blessing, a Volkswagen AG Human Resources Board Member, stated in a press release that the Pact would "make Volkswagen slimmer, faster, and stronger." (*Id.* at 10.)

In March 2017, Volkswagen held a human-resources conference, during which it emphasized that "human resources transformation [was] crucial for the success of the pact for the future." (*Id.*) Volkswagen described one of the key topics of the conference as the "development of the workforce of the brand and its locations." (*Id.* at 11.) That same month, Volkswagen transferred a human-resources employee from Germany to Volkswagen Chattanooga to serve as the Senior Vice President of Human Resources. (*Id.* at 2, 11.)

A month later, a new manager in her thirties replaced Manlove's boss, who was in his sixties. (*Id.* at 2.) Then, on June 6, 2017, Volkswagen issued a press release concerning its plans for a "fundamental personnel transformation" in the "next few months." (*Id.* at 11.) Addressing an early-retirement program for German workers, Dr. Blessing stated that "employees who would rather continue to work are saying that they will make an active contribution, will qualify for new tasks and will be prepared to transfer to another business area or location." (*Id.*) The next week, Volkswagen announced a new head of the Chattanooga plant "who would report directly" to Hinrich J. Woebcken, the CEO of both Volkswagen America and Volkswagen AG's North American region. (*Id.*) Then, on June 26, 2017, Volkswagen AG issued another press release, in which Dr. Diess stated, "We are expecting our management levels to become younger

and slimmer[.]" (*Id.* at 12 (original emphasis removed).)  Dr. Diess continued, "We are becoming slimmer, leaner and younger.  This will make Volkswagen faster and more efficient at the same time as providing new motivation for junior managers." (*Id.*)  Two days later, Mike Beamish, Executive Vice President of Human Resources for Volkswagen America, circulated a memorandum to employees, stating that the Pact would have no effect on jobs in the United States.  (*Id.* at 12–13.)

On June 29, 2017, Volkswagen transferred Manlove, who was fifty-three years old at the time, from his position of Assistant Manager to the lower-ranking and lower-paid position of Supervisor in another department.  (*Id.* at 6, 15–16.)  A human resources representative told Manlove he would continue to receive the higher Assistant Manager salary for only the first year in the new position.  (*Id.* at 14.)  She also told him the demotion was for "economic reasons" and unrelated to his performance.  (*Id.* at 15.)  His transfer occurred after the new manager of In-House Logistics reorganized that department and eliminated two of five Assistant Manager positions, including his position and the position of another employee older than fifty.  (*Id.*)  Two younger employees and one older than fifty filled the three surviving Assistant Manager positions.  (*Id.*)  That older employee, however, supervised only twelve employees in his new position, as opposed to the ninety he supervised before the reorganization.  (*Id.*)

Before the Pact was announced, seven of the fourteen employees in Logistics[3] at or above a Grade-8 salary level were over fifty years of age.  (*Id.* at 16)  Afterwards, only three of fourteen employees at or above Grade 8 were over fifty years of age.  (*Id.*)

Plaintiff Jonathan Manlove filed this action on June 29, 2018, and an amended complaint on September 18, 2018.  (Docs. 1, 12.)  He sues Volkswagen for injunctive relief against

---

[3] The Logistics department includes the In-House Logistics group.  (*Id.* at 15.)

Volkswagen's policy "in his individual capacity and on behalf of a class of current and former employees 50 years of age and older who work for Volkswagen in the United States." (Doc. 12, at 1.) Specifically, Manlove asserts: (1) individual and collective-action claims under the ADEA, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); and (2) individual and class-action claims under the THRA, pursuant to Federal Rule of Civil Procedure 23. (Doc. 12, at 3, 21.)

With regard to his collective-action claims under the ADEA, Manlove alleges that he and all Volkswagen employees in the United States fifty years old or older are similarly situated in that "Volkswagen transferred, demoted, or otherwise pressured them into leaving their employment as part of its common plan and scheme to phase out older workers." (*Id.* at 20.) He claims "[t]here is a common nexus of fact and law suggesting that Plaintiff and members of the collective action were discriminated against in the same manner." (*Id.* at 20–21.)

With regard to his THRA claims, Manlove asserts class-action claims on behalf of "all Volkswagen employees [fifty years old or older] who worked at any of Volkswagen's Tennessee facilities from November 2016 through the date of the final judgment." (*Id.* at 21.) He asserts that this class can fulfill the requirements of Federal Rule of Civil Procedure 23(a), and both 23(b)(2) and 23(b)(3) in large part because all members of the proposed class are allegedly subject to the same discriminatory policy. (*Id.* at 21–24.)

In March 2019, Manlove moved for conditional certification of a collective action based on his ADEA claim. (Doc. 73.) The next month, Volkswagen filed its motion for partial judgment on the pleadings as to the class- and collective-action allegations or, alternatively, to strike them. (Doc. 88.) On June 11, 2019, the Court granted in part Manlove's motion for conditional certification of an ADEA collective action composed of Volkswagen employees fifty

5

years of age or older who work in Chattanooga. (Doc. 100.) Manlove has not yet moved for class certification of his THRA claim. Volkswagen's motion is now ripe for the Court's review.

## II. STANDARD OF REVIEW

On a motion under Rule 12(c), the standard is the same as that for a motion under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The Court must accept all well-pleaded material allegations of the pleadings of the nonmoving party as true, and it may grant the motion only if the moving party is nevertheless clearly entitled to judgment as a matter of law. *Id.* For the purposes of this determination, the Court construes the pleadings in the light most favorable to the nonmoving party and assumes the veracity of all well-pleaded factual allegations in the nonmovant's pleading. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity does not, however, extend to bare assertions of legal conclusions, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986). This pleading standard applies to all civil actions, including those asserting class- and collective-action claims. *Iqbal*, 556 U.S. at 684. "[A]n action is not maintainable as a class action merely because it is designated as such in the pleadings." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200–01 (6th Cir. 1974).

When a plaintiff sues as a class representative, the court should decide "[a]t an early practicable time" whether or not a class action should be certified. Fed. R. Civ. P. 23(c)(1)(A). The plaintiff usually initiates this process by moving to certify a class; however, under Rule 23(d)(1)(D), a defendant may move to strike class allegations in a complaint when they are so facially deficient that discovery is unnecessary to consider their merits. *See* Fed. R. Civ. P. 23(d)(1)(D); *see, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

Similarly, a defendant may move to strike "immaterial" collective-action allegations under Rule 12(f).

But when "[n]othing in plaintiff's complaint clearly shows that plaintiff cannot successfully apply for certification of a class or sub-classes[,]" courts deny motions to strike class allegations as premature. *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 890 (N.D. Ohio 2013), *on reconsideration sub nom. Huffman v. Electrolux Home Prod., Inc.*, No. 3:12CV2681, 2013 WL 5591939 (N.D. Ohio Sept. 30, 2013); *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008) (concluding that plaintiffs were entitled to discovery before seeking class certification, after each party offered a "batch of non-controlling case law"—one indicating the appropriateness of moving to strike class allegations at the pleading stage "when it is facially obvious that . . . the class will never be readily ascertainable," the other viewing such a motion as premature); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078–79, 1086 (6th Cir. 1996) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)) (noting that a court should defer decision on class certification when "the existing record is inadequate" for a "rigorous analysis").

## III. ANALYSIS

Volkswagen asks the Court to dismiss Manlove's class-action and collective-action claims, arguing that Manlove has not "pleaded sufficient facts to make his Rule 23 Class Action and § 216 Collective Action allegations plausible." (Doc. 89, at 11.) Alternatively, Volkswagen asks the Court to strike the class-action allegations under Rule 23(d)(1)(D) and collective-action allegations under Rule 12(f). (*Id.* at 9.)

A. **Class-Action Claims**

To achieve class certification, Manlove will have to fulfill the requirements of Rule 23(a)—known as numerosity, commonality, typicality, and adequacy of representation—and one of the requirements under Rule 23(b). Fed. R. Civ. P. 23(a), (b). Volkswagen argues that Manlove will not be able to show commonality or adequacy of representation under Rule 23(a). (Doc. 89, at 7, 12.)

This Court should dismiss or strike class-action allegations only when it is clear that the plaintiff will not be able to fulfill Rule 23's requirements. For example, in *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011), the United States Court of Appeals for the Sixth Circuit affirmed a district court's decision to strike class allegations for failure to meet the predominance requirement under Rule 23(b), when different states' laws would govern putative class members' claims and "no proffered or potential factual development offer[ed] any hope of altering that conclusion[.]" *Id.* at 949; *see also, e.g.*, *Green v. Liberty Ins. Corp.*, No. 15-10434, 2016 WL 1259110, at *6 (E.D. Mich. Mar. 30, 2016) ("Due to the utter absence of specific facts required to undergird Plaintiffs' allegations, it is not necessary to wait until the conclusion of discovery to make a determination on class certification. It is clear from the face of the Complaint that Plaintiffs have not satisfied the requirements of Rule 23."); *Kissling v. Ohio Cas. Ins. Co.*, No. CIV.A.5:10-22-JMH, 2010 WL 1978862, at *3 (E.D. Ky. May 14, 2010) (dismissing class allegations as "not plausible on their face," when "extensive, individualized factual inquiries" would have been required to ascertain class membership); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *10–11 (M.D. Tenn. Mar. 24, 2010) (striking class allegations related to unjust-enrichment claim, while noting that "class-wide

adjudication is generally not appropriate for unjust enrichment claims" because individual issues would predominate).

Commonality requires that claims "depend upon a common contention . . . of such a nature that . . . the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Based on Manlove's well-pleaded factual allegations involving the Pact, it is plausible that he will be able to show commonality: the determination of whether the Pact is a policy of treating younger workers more favorably than older workers "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Volkswagen argues that Manlove does not plausibly allege "the requisite 'glue' [to] hold[ ] together the Rule 23 Class Action." (Doc. 89, at 12 (quoting *Wal-Mart*, 564 U.S. at 352).) But it is plausible that the Pact will provide that "glue."

The policy alleged here is easily distinguished from the policy the Supreme Court found lacked a "common contention" in *Wal-Mart*. 564 U.S. at 350. There, the "policy" consisted of "*allowing discretion* by local supervisors over employment matters." *Id.* at 354. That "policy" contrasts sharply with the alleged policy in this case, which involves a centralized mandate from Germany, with local implementation allegedly ensured by executives transferred from Germany and local practices designed to discourage older employees' advancement.

Manlove alleges that Volkswagen executives acknowledged a preference for younger employees. (*E.g.*, Doc. 12, at 12 (Dr. Diess stating: "We are becoming slimmer, leaner and younger. This will make Volkswagen faster and more efficient at the same time as providing new motivation for junior managers.").) Dr. Blessing stated that "employees who would rather continue to work are saying that they will make an active contribution, will qualify for new tasks

9

and will be prepared to transfer to another business area or location." (*Id.* at 11.)  Although this comment, according to Volkswagen, refers only to German employees eligible for an early-retirement program, employees in Chattanooga did not take it that way.  Indeed, two days after Volkswagen included Dr. Blessing's comment in a press release, Beamish, the Executive Vice President of Human Resources for Volkswagen America assured employees that the Pact would not affect them, urging that the comments in the press release "should not be misinterpreted as a preference for employees based on a particular age or experience level." (Doc. 43-2; Doc. 12, at 12–13.)

Manlove further alleges that Volkswagen transferred employees from Germany to Chattanooga to implement the Pact.  First, in March 2017, Koesling became the new Senior Vice President of Human Resources in Chattanooga.  (Doc. 12, at 2, 11.)  Around June 2017, Volkswagen issued a press release communicating that its plans for the "next few months" involved a "fundamental personnel transformation." (*Id.* at 11.)  A week later, Volkswagen appointed a new head of the Chattanooga plant "who would report directly" to the CEO of Volkswagen America.  (*Id.*)  These transfers support the plausibility of Manlove's assertion that Volkswagen AG exerts control over Volkswagen America and the Chattanooga plant, including on matters of personnel policy and the Pact.  (*See id.* at 4–6.)

Manlove contends that Volkswagen AG exerted this control in order to implement its policy of "subject[ing] older workers to adverse employment actions—such as onerous transfers and material changes in job duties—to push them out of the Company." (*Id.* at 11.)  He alleges that Volkswagen demoted him only three days after the June 26, 2017 Volkswagen brand press release, not for "economic reasons" as Volkswagen claimed, but as part of its new discriminatory policy.  (*Id.* at 14–16.)  Manlove further alleges that, while Volkswagen was restructuring his

department, In-House Logistics, it was taking parallel adverse actions against other older employees to achieve a younger workforce. (*See id.* at 16 (alleging that the number of Grade-8 or higher employees over fifty years old in the Logistics department decreased from seven to three after the Pact was announced).) In light of the temporal proximity of all of these alleged events, one could plausibly infer from these allegations that the Pact reflects a preference for younger workers; that the Pact applies to Chattanooga; and that, through the Pact, Volkswagen has discriminated against a class of older Volkswagen employees working in Chattanooga. Manlove's factual allegations plausibly support a contention common to the whole class. *See Wal-Mart*, 564 U.S. at 350.

Manlove's allegations about the Pact are also sufficient to plausibly infer, at the pleading stage, that Manlove will be an adequate representative of the class. Adequacy of representation exists when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts must consider "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5. Fair and adequate representation requires that a class representative "possess the same interest and suffer the same injury" as the other class members, in order to prevent "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (internal quotation marks omitted).

Volkswagen argues that Manlove is an inadequate representative because his interests conflict with putative class members at different levels in the corporate hierarchy. (Doc. 89, at 7; Doc. 93, at 13.) Volkswagen asserts that "includ[ing] both managers and non-managers . . . creates an inherent and insurmountable conflict of interest because Plaintiff and other unnamed

11

managers and supervisors would have been responsible for implementing the very actions that Plaintiff claims constitute discrimination against non-managers." (Doc. 89, at 7.) But Volkswagen's argument relies on assumptions about the kinds of evidence that will be offered by the parties. It does not explain how older Volkswagen employees' interests necessarily differ with respect to the specific class allegations and the relief sought in the amended complaint. In this action to enjoin Volkswagen from implementing the Pact or otherwise discriminating against older workers, all putative class members allegedly suffer the same injury of being treated differently than younger employees, and all have the same interest in ending a policy of such treatment. *See Amchem*, 521 U.S. at 625–26. Because the complaint is not facially deficient with respect to Manlove's adequacy as a class representative, the Court will defer further analysis of this requirement until the parties have had the benefit of discovery.

In sum, the factual allegations involving the Pact and its implementation in the United States plausibly support a claim of age discrimination based upon a common scheme or policy, and it is not clear from the face of the complaint that Manlove will be unable to satisfy Rule 23's requirements. Accordingly, the Court will **DENY** Volkswagen's motion for judgment on the pleadings as to Manlove's class-action claims and Volkswagen's alternative motion to strike the class-action allegations.

### B. Collective-Action Claims

Volkswagen moves for judgment on the pleadings as to Manlove's collective-action claims or, alternatively, to strike the collective-action allegations in the complaint, pursuant to Federal Rule of Civil Procedure 12(f). (Doc. 88, at 2.)

Just as the factual allegations plausibly support class-action certification as explained above, they also plausibly support collective-action certification. Manlove asserts that

employees are similarly situated due to the common effects of Volkswagen's implementation of the Pact. In alleging that Volkswagen employees fifty years of age or older working in the United States are similarly situated, Manlove relies upon the Pact as a "common plan and scheme to phase out older workers." (Doc. 12, at 20.) He alleges that Volkswagen has discriminated against older workers through unlawful demotion, transfer, termination, failure to promote, and "attempt[s] to coerce older employees" into retiring or quitting. (*Id.* at 21.) Manlove brings these claims on behalf of all Volkswagen employees fifty years of age or older in the United States (*id.* at 20), although the Court has only certified a collective action of Volkswagen employees fifty years of age or older working in Chattanooga (Doc. 100, at 19). Manlove alleges varying kinds of adverse actions that putative opt-in plaintiffs may have experienced (*see* Doc. 12, at 20–21), but all relate to the central claim that Volkswagen has implemented the Pact as a global policy of favoring younger workers and offering fewer opportunities or weeding out older employees. (*See id.* at 12 (quoting a June 26, 2017 press release that stated that "[t]he Volkswagen brand is consistently implementing the pact for the future in all areas of the company").) Manlove emphasizes that, in the same press release, Dr. Diess announced, "We are expecting our management levels to become younger and slimmer." (*Id.* (original emphasis removed).)

At this stage, Manlove plausibly alleges that the conditionally certified collective-action members are similarly situated. The Court will therefore **DENY** Volkswagen's motion for judgment on the pleadings as to Manlove's collective-action claims. Manlove's collective-action allegations in support of those claims are fully relevant to this proceeding, and, therefore, the Court will **DENY** Volkswagen's alternative motion to strike them. *See* Fed. R. Civ. P. 12(f).

## IV. CONCLUSION

For the reasons set forth above, Volkswagen's motion for oral argument (Doc. 96), and its partial motion for judgment on the pleadings as to the class allegations and collective-action claims or, alternatively, to strike the class and collective-action allegations (Doc. 88), are **DENIED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**