IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JONATHAN MANLOVE,                          )
Individually, and on behalf of others      )
similarly situated,                        )
                                           )
                   Plaintiff,              )
                                           )          No. 1:18-cv-145
v.                                         )
                                           )          **Judge McDonough**
VOLKSWAGEN AKTIENGESELLSCHAFT,             )          **Magistrate Judge Steger**
VOLKSWAGEN GROUP OF AMERICA,               )
INC., and VOLKSWAGEN GROUP OF              )
AMERICA CHATTANOOGA                        )
OPERATIONS, LLC,                           )
                                           )
                   Defendants.             )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND FOR APPROVAL OF ATTORNEYS' FEES CONSISTENT WITH THE PARTIES' SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.    PROCEDURAL HISTORY, SETTLEMENT NEGOTIATIONS, AND THE CLASS
      MEMBERS' UNIFORMLY FAVORABLE RESPONSE TO THE SETTLEMENT .......3

II.   SUMMARY OF THE PROPOSED SETTLEMENT ...........................................................7

      A.   Comprehensive Programmatic Relief .....................................................................7

           1.   Changes to Hiring and Promotion Procedures...................................................8

           2.   Changes to Discrimination Complaints and Investigation Procedures ....... 8

           3.   Comprehensive Anti-Discrimination Training and Education .................. 9

           4.   Safeguards Against Future Discriminaiton ............................................... 10

           5.   Management Training Program Reforms ................................................. 10

      B.   Release Limited to Claims for Class-Based Injunctive Relief.............................10

      C.   Consideration for Attorneys' Fees and Costs ......................................................11

III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE STATE LAW
      SETTLEMENT UNDER RULE 23(e) ..........................................................................11

      A.   The Law Favors Class Action Settlements ..........................................................11

      B.   The Settlement is the Product of Non-Collusive Negotiations and is Fair,
           Reasonable, and Adequate ...................................................................................12

           1.   The Settlement is the Product of Well-Informed, Arm's-Length Negotiation
                with No Hint of Collusion................................................................................12

           2.   Neither Side Can Be Guaranteed Ultimate Success on the Merits ........... 14

           3.   The Litigation is Complex and Would Otherwise Take Years, and
                Significant Resources, to Litigate ........................................................... 15

           4.   The Amount of Discovery Completed Favors Approval........................... 16

           5.   The Judgment of Experienced Trial Counsel and the Approval of the Class
                Representatives Favor Approval......................................................................17

           6.   The Reaction of the Settlement Class Members ...................................... 18

                a. The Calvert "Objection" ............................................................... 19

ii

7.  The Public Interest Favors Settlement .................................................. 20

C.  The Settlement Provides Fair and Equitable Treatment to the Settlement Class Members ...................................................................................... 21

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT UNDER § 216(b) ........................................................................................ 21

V.  THE COURT SHOULD APPROVE ATTORNEYS' FEES AND COSTS IN THE AMOUNT SPECIFIED IN THE SETTLEMENT ............................................ 22

A.  The Standard for Awarding Attorneys' Fees to Class Counsel ................ 23

1.  Counsel Has Rendered an "Exceptional" Benefit to the Class .......... 25

2.  Society Has a Stake in Encouraging Private Attorneys to Undertake Important Discrimination Litigation ................................................ 26

3.  Class Counsel's Services Were Undertaken on a Contingency Fee Basis ........................................................................................... 28

4.  The Lodestar Value of Class Counsel's Work Far Exceeds the Requested Fee .............................................................................. 28

5.  The Complexity of the Litigation Supports the Requested Fee ......... 30

6.  The Attorneys in this Action Have a High Standing at the Bar and Have Shown Great Skill and Resourcefulness in Bringing the Case to this Successful Conclusion ................................................................... 31

CONCLUSION ..................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**.................................................................................................................**Page(s)**

*Amos v. PPG Indus., Inc.*,
  No. 2:05-CV-70, 2019 WL 3889621 (S.D. Ohio Aug. 16, 2019) ......................... 28

*Bailey v. AK Steel Corp.*,
  No. 1:06-CV-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ........................... 24

*Barnes v. Winking Lizard, Inc.*,
  No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019)................................... 16, 17

*Bartlow v. Grand Crowne Resorts of Pigeon Forge*,
  No. 3:11-CV-400, 2012 WL 6707008 (E.D. Tenn. Dec. 26, 2012) ...................... 22

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 CIV 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .................... 31

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ................................................................................... 27

*Bowman v. Art Van Furniture, Inc.*,
  No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018) ................................ 13, 16, 17

*Charlebois v. Angels Baseball, LP*,
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) .............................................................. 23

*Dallas v. Alcatel-Lucent USA, Inc.*,
  No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013) ...................... 27, 32

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ............................................................... *passim*

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ........................ 30

*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ........................................................................... 12, 15

*Elliott v. LVNV Funding, LLC*,
  No. 3:16-CV-00675, 2019 WL 4007219 (W.D. Ky. Aug. 23, 2019)................................... 17

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ...................................................................................... 25

iv

*Ford Motor Co. v. Mustangs Unlimited, Inc.*,
 487 F.3d 465 (6th Cir. 2007) ................................................ 12

*Granada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir. 1992) ............................................. 12

*Gokare v. Fed. Express Corp.*,
 No. 2:11-CV-2131, 2013 WL 12094870 (W.D. Tenn. Nov. 22, 2013) .................... 12, 13, 18

*Grewe v. Cobalt Mortg., Inc.*,
 No. C16-0577, 2016 WL 4014114 (W.D. Wash. July 27, 2016) ......................... 21

*Hamlin v. Charter Twp. of Flint*,
 165 F.3d 426 (6th Cir. 1999) ............................................. 28

*Harbin v. Emergency Coverage Corp.*,
 No. 3:16-CV-125, 2018 WL 3284476 (E.D. Tenn. Apr. 16, 2018) ............................... 15, 16

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ...................................................... 24, 27

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D. Mich. 2003) ...................................... 26

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
 No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ................... 28

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
 248 F.R.D. 483 (E.D. Mich. 2008) ...................................... 19

*In re Ira Haupt & Co.*,
 304 F. Supp. 917 (S.D.N.Y 1969) ........................................ 14

*In re Novartis Wage & Hour Litig.*,
 No. 1:06-md-1794 (S.D.N.Y. May 31, 2012) ....................................... 31

*In re Rio Hair Naturalizer Prod. Liab. Litig.*,
 No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ........................... 27

*In re Se. Milk Antitrust Litig.*,
 No. 2:07-CV-208, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) ............................. *passim*

*In re Se. Milk Antitrust Litig.*,
 No. 2:07-CV-208, 2012 WL 12875983 (E.D. Tenn. July 11, 2012) ......................... 26, 27, 32

*In re: Skelaxin (Metaxalone) Antitrust Litig.*,

v

No. 2343, 2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014) ................................................. 12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2:12-CV-4, 2015 WL 13650515 (E.D. Tenn. Jan. 16, 2015) ................................. *passim*

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ........................................................................................... 28

*In re Xcel Energy Inc. Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................................. 26

*Isabel v. City of Memphis*,
404 F.3d 404 (6th Cir. 2005) .......................................................................................... 25

*Johnson v. W2007 Grace Acquisition I, Inc.*,
No. 13-2777, 2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) ...................................... 24, 29

*K.H. v. Sec'y of Dept. of Homeland Security*,
No. 15-cv-02740, 2018 WL 6606248 (N.D. Cal. Dec. 17, 2018)......................................... 23

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010) ............................................................................. 28

*Lowther v. AK Steel Corp.*,
No. 1:11-CV-877, 2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ...................................... 26

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ....................................................................................... 21

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................................. 26

*Manners v. Am. Gen. Life Ins. Co.*,
No. CIV.A. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ..................... 24, 25

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................................... 28

*McBean v. City of New York*,
233 F.R.D. 377 (S.D.N.Y. 2006) ..................................................................................... 23

*McGee v. Cont'l Tire N. Am., Inc.*,
No. CIV. 06-6234(GEB), 2009 WL 539893 (D.N.J. Mar. 4, 2009) ................................ 26

*Mitchell v. Indep. Home Care, Inc.*,
No. 2:17-CV-717, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019) ..................................... 17

vi

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ......................................................... 23

*New England Health Care Employees Pension Fund*,
  234 F.R.D. 627 (W.D. Ky. 2006)..................................................... 14

*Pan v. Qualcomm Inc.*,
  No. 16-CV-01885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) ................................... 17, 31

*Patterson v. Am. Tobacco Co.*,
  535 F.2d 257 (4th Cir. 1976) ......................................................... 14

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ....................................................... 25

*Rawlings v. Prudential-Bache Properties, Inc.*,
  9 F.3d 513 (6th Cir. 1993) ........................................................... 29

*Robinson v. Shelby County Bd. of Ed.*,
  566 F.3d 642 (6th Cir. 2009)......................................................... 11

*Salinas v. U.S. Xpress Enterprises, Inc.*,
  No. 1:13-CV-00245, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) .................................. 27

*Smith v. Merck & Co.*,
  No. CV132970, 2019 WL 3281609 (D.N.J. July 19, 2019) ..................................... 18

*Swigart v. Fifth Third Bank*,
  No. 1:11-CV-00088, 2014 WL 12654902 (S.D. Ohio Feb. 19, 2014) ................................. 21

*Todd v. Retail Concepts, Inc.*,
  No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ........................... 20

*UAW et al. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...................................................... 11, 15

*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) ......................................................... 21

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 18, 31

*Wellens v. Sankyo*,
  No. C 13-00581, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ............................. 18

vii

*Wells v. Meyer's Bakery*,
   561 F.2d 1268 (8th Cir. 1977) ............................................................. 14

*Wooten v. Smith & Nephew, Inc.*,
   No. 2:06-cv-02571, 2009 U.S. Dist. LEXIS 130317 (W.D. Tenn. Nov. 25, 2009) .............. 18

*Zolkos v. Scriptfleet, Inc.*,
   No. 12 CIV. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ........................................ 31

*Zolkos v. Scriptfleet, Inc.*,
   No. 12 CIV. 8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) .......................................... 18

## Statutes

29 U.S.C. § 621 ............................................................................................... 3

29 U.S.C. § 626 ............................................................................................. 21

29 U.S.C. § 216 ........................................................................................ *passim*

Fed. R. Civ. P. 23 .................................................................................... *passim*

T.C.A. § 4-21-101 ........................................................................................... 3

T.C.A. § 4-21-311 ......................................................................................... 27

## INTRODUCTION

After years of contested litigation, the parties have reached a comprehensive Settlement that is ready for final approval. The Settlement provides substantial benefits to the class of older workers in this action for injunctive relief while preserving their rights to seek individualized remedies. Under the Settlement, Volkswagen will adopt and/or maintain comprehensive programmatic measures designed to remedy the corporate policies and practices alleged to have impacted its Chattanooga manufacturing facility. Accordingly, the Settlement will help to ensure equality of opportunity for older workers in Chattanooga. Settlement Class members retain any individual claims for monetary damages, reinstatement, and other forms of individualized injunctive relief. Accordingly, the Settlement represents the optimal outcome of this litigation. It is doubtful that further years of risky, uncertain litigation will yield a better result in terms of a program of institutional reforms. Immediate relief and final resolution of this matter is highly preferable, and Settlement Class members do not sacrifice the chance to pursue any individual relief.[1]

On February 3, 2020, this Court (i) preliminarily approved the proposed collective and class action settlement in this action, (ii) certified the Fed. R. Civ. P. 23(b)(2) Class and 29 U.S.C. § 216(b) ADEA Collective for settlement purposes, (iii) appointed class counsel and class representatives, (iv) authorized Notice to the Class members, and (v) set a date for the final fairness hearing. *See* Order Preliminarily Approving Settlement (Dkt. 134). Since the Court's Order, Notice has been sent to the 771 members of the Class, none of whom has objected to the Settlement's

---

[1] Each of the Named and Opt-in Plaintiffs has separately settled and resolved his or her claims for such personal relief, based upon their individual allegations of past discrimination. Out of abundance of caution, Plaintiffs hereby identify these agreements pursuant to Rule 23(e)(3)—as they did in connection with preliminary approval proceedings.

1

terms or suggested that the Settlement is unfair, unreasonable, or inadequate in any way.[2]

The Court should approve the Settlement (Dkt. 133-1 at Page ID## 1630–56) as fair, reasonable, and adequate and enter final judgment dismissing the case. Because the Settlement was reached through a fair process, including multiple arm's-length mediations overseen by an experienced third-party neutral, it should be accorded a presumption of fairness. And because the Settlement represents an excellent substantive outcome for the Class, it meets the criteria for approval under Rule 23(e). Since the Rule 23(e) standard is more stringent than the standard for the approval of FLSA/ADEA settlements, approval of the collective action settlement follows *a fortiori*.

Plaintiffs also seek approval of the $995,000 that Defendants[3] agreed to pay as a fair and reasonable settlement of Plaintiffs' and the Class Members' claims for attorney's fees, costs, and expenses. As a matter of law, Plaintiffs and their counsel are entitled to be compensated for their vast expenditure of time and resources needed to achieve the favorable outcome of this matter. The negotiated fee provision is less than half of Class Counsel's lodestar to date, which is only expected to increase through the settlement approval and administration process. The fee is well within the bounds of reasonableness and does not indicate collusion. The Court should endorse the requested fee award as an acceptable compromise between the parties that does not sacrifice the

---

[2] One class member has submitted a self-styled "objection" (Dkt. 135-1) but this document does not constitute an actual objection within the meaning of Rule 23(e)(5) and should form no obstacle to settlement approval. Rather, the individual indicates that he was not personally a victim of Defendants' alleged discriminatory practices and wishes to be excluded from the Settlement; this is more akin to an opt-out (which is not permitted in a Rule 23(b)(2) settlement) and is no reason to reject the parties' agreement to robust programmatic relief. None of the relief effectuated by the settlement will harm class members who have not suffered past discrimination but will only benefit them going forward. *See* § III.B.6.a., *supra*.

[3] "Defendants" or "Volkswagen" refers collectively to Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VWGoA"), and Volkswagen Group of America Chattanooga Operations LLC ("VW Chattanooga").

interests of the Class. Despite ample notice, no Class Member has objected to the proposed fee. Ultimately, reducing the agreed-upon fee would not benefit the Settlement Class but would only profit Volkswagen by returning money it has agreed to pay in satisfaction of Plaintiffs' fee-shifting claims and to avoid the risk of a larger award.

Particularly in an injunctive-only settlement such as this one, the parties could have stopped at negotiating the class relief and reserved the issue of attorney's fees and costs for the Court. This would have required the Court to address a full-blown contested fee petition, placing greater burdens on the parties and Court and exposing both parties to substantial risk. Instead, the parties determined to ease these burdens and mitigate their respective risk by negotiating an arm's-length agreement over fees with the mediator's assistance. Where there is no detriment to the class, the Court should defer to the parties' judgment regarding the amount of fees that they are both reluctantly prepared to accept in settlement of the fees claim. This is the essence of compromise.

## I. PROCEDURAL HISTORY, SETTLEMENT NEGOTIATIONS, AND THE CLASS MEMBERS' UNIFORMLY FAVORABLE RESPONSE TO THE SETTLEMENT

Plaintiffs brought this suit against Volkswagen for injunctive relief to enjoin and counteract the implementation of its Pact for the Future ("Pact")—alleged to be a systematic corporate initiative to phase out older workers, as allegedly manifested in adverse employment actions against Plaintiffs and other similarly-situated employees.

On June 29, 2018, Plaintiff Jonathan Manlove filed a class action complaint against Volkswagen, amended on September 18, 2018, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. ("ADEA"), and the Tennessee Human Rights Act, T.C.A. §§ 4-21-101, *et seq*. ("THRA"), and seeking class-wide injunctive relief. Dkt. 1, 12. Since then, four individuals—Ricky Orr, Laura Carter, Virgil Yeager, and Earl Owens—have opted in as party plaintiffs to the ADEA collective action. Pursuant to Volkswagen's class-wide arbitration

agreement, Mr. Manlove and each of the opt-in Plaintiffs filed arbitrations seeking individualized monetary relief, which the parties concur is not available in this action by virtue of Plaintiffs' agreements with Volkswagen to arbitrate claims for such relief.

On October 30, 2018, Volkswagen moved to compel the injunctive claims in this action into arbitration and to dismiss or stay the action. Volkswagen also moved to dismiss the parent corporation VWAG for alleged lack of personal jurisdiction. Dkts. 29–32. The Court held that the arbitrator must decide the issue of whether the injunctive claims pled in this action were subject to mandatory arbitration under the arbitration agreements and stayed the action while the arbitrator reached its determination. Dkt. 57. Following briefing before the arbitrator, the arbitrator concluded that the claims for injunctive relief could proceed in court. Dkt. 65. Further, the Court denied VWAG's motion to dismiss for lack of jurisdiction and insufficient service of process. Dkt. 90.

Plaintiff moved for equitable tolling on potential opt-ins' ADEA claims. Dkt. 61. The Court granted tolling from January 11 to February 28, 2019, the pendency of the stay. Dkt. 70.

On December 6, 2018, Plaintiff moved for a Preliminary Injunction to enjoin implementation of Volkswagen's Pact for the Future and address its effects. Dkt. 37. Following extensive proceedings, the Court denied the motion as premature. Dkt. 95.

Plaintiffs moved to conditionally certify the ADEA collective action on March 13, 2019 (Dkts. 73–74), which the Court granted in part on June 11, 2019, conditionally certifying a collective action "of all current employees of Volkswagen Chattanooga and Volkswagen America who work in Chattanooga and who are fifty years of age or older." Dkt. 100.

4

In parallel, Volkswagen moved for partial judgment on the pleadings as to Plaintiffs' class claims on April 22, 2019, contending that Plaintiff had not plausibly pled a viable class action. Dkts. 88–89. The Court denied the motion on June 28, 2019. Dkt. 108.

The Parties submitted competing proposals for § 216(b) collective action opt-in notice. Dkts. 113–116. On June 28, 2019, Plaintiffs moved the Court for an order expanding the collective action to include former employees. Dkts. 110–111. Volkswagen responded on July 12, 2019, agreeing to include former employees who were involuntarily terminated. Dkt. 117.

To avoid unnecessary litigation, cost, and expense, the Parties agreed to engage in private mediation. The Parties retained Michael Russell, a well-known and experienced mediator familiar with both Sixth Circuit and Tennessee employment law, to assist them in their negotiations. In advance of the mediation, Volkswagen provided Plaintiffs' counsel with significant informal discovery necessary to evaluate the Class' claims, including information concerning its corporate policies and the creation of the Pact for the Future.

The Parties participated in the first of three full days of mediation on September 18, 2019, at the end of which they executed a term sheet regarding injunctive relief, setting forth the programmatic relief to be provided to the Settlement Class. This relief is largely consistent with and expands upon the measures sought in Plaintiff's preliminary injunction motion (Sharp Decl. Ex. 4). Sharp Decl. ¶¶ 18, 38. The Parties continued negotiations before Mr. Russell in full-day mediations on September 27 and October 15, 2019, as well as remotely via phone and email, eventually reaching agreements regarding other material terms, including attorneys' fees, in addition to resolving each Plaintiff's individual arbitration claims. *Id*. ¶¶ 19–22. On October 20, 2019, Mr. Russell filed a Mediator's Report informing the Court that a settlement had been reached on all material terms. Dkt. 127. On December 20, 2019, the Parties executed a detailed binding

5

term sheet containing these terms. Dkt. 129. Finally, the Parties executed the formal Settlement on January 31, 2020.

On January 31, 2020, Plaintiffs filed a motion requesting that the Court: (a) certify a Rule 23(b)(2) settlement class on the Tennessee state-law claims; (b) grant final certification of a § 216(b) collective action on the ADEA claims for settlement purposes; (c) appoint Jonathan Manlove, Laura Carter, and Ricky Orr as Settlement Class Representatives and Sanford Heisler Sharp, LLP as Class Counsel; (d) preliminarily approve the Parties' Rule 23 Settlement; (e) approve the Parties' § 216(b) Collective Action Settlement; (f) approve the proposed Notice to Class Members and proposed Opt-in and Waiver and Release of ADEA Claims form; and (g) schedule a final approval hearing. *See* Dkts. 132–33. On February 3, 2020, this Court granted Plaintiff's motion and preliminarily approved the Settlement. *See* Dkt. 134.

Pursuant to the Court's Order, the Class Administrator (RG2 Claims Administration, LLC) mailed the Notice of Proposed Collective and Class Action Settlement and Opt-in and Waiver and Release of ADEA Claims form (Ex. 2 to Decl. of Kevin Sharp) to each of the 771 Class Members on March 2, 2020. Sharp Decl. ¶¶ 30–31. To date, only twenty-one notices were returned or undeliverable; through address searches, the Class Administrator was able to remail the Notice to twelve of those twenty-one Class Members. *See id*.; Class Administrator Weekly Status Report (Ex. 3 to Sharp Decl.).

Of the 771 class members, only one has filed a self-styled "objection." *See* Dkt. 135-1; Sharp Decl. ¶ 32. This so-called "objection" is not presented in accordance with the terms of the Court's Order Preliminarily Approving Settlement or the Settlement Agreement; nor does it raise any concerns regarding the fairness of the Settlement terms. *Id*.; *see* Order Preliminarily Approving Settlement (Dkt. 134 at Page ID# 1630, ¶ 10); Settlement Agreement ¶ 7.3.1 (Dkt. 133-1 at Page

6

ID# 1645). Rather, the Class Member indicates that he did not personally experience discrimination at Volkswagen and therefore does not wish to participate in the Settlement. *See* Dkt. 135-1; Sharp Decl. ¶ 32. But, in a Rule 23(b)(2) injunctive settlement, there is no individualized relief for uninjured Class Members to opt-out of. All Class Members will benefit in unison from programmatic measures designed to protect them against potential future discrimination and ensure that they have equal opportunity going forward.

Thus, no Class Members have filed a valid objection or raised any concerns regarding the terms or provisions of the Settlement.

## II.      SUMMARY OF THE PROPOSED SETTLEMENT

After extensive analysis and deliberation, Plaintiffs believe that the Settlement is fair, reasonable, and adequate, as it provides the Settlement Class with substantial injunctive relief without waiving any Class Member's rights to pursue individual claims for monetary or injunctive relief. Sharp Decl. ¶ 28. (Class Members who do not claim to have suffered past discrimination, such as the so-called "objector" here, would naturally refrain from bringing such claims.) Absent the Settlement, Plaintiffs would face protracted and costly litigation fraught with risks and uncertainties. *Id*. ¶ 7. In light of these facts and circumstances, Plaintiffs are confident that the Settlement is in the Class' best interests.

### A.      **Comprehensive Programmatic Relief**

The Settlement requires Volkswagen to implement or maintain significant programmatic measures and reforms specifically tailored, based on Plaintiffs' experiences and recommendations, to address Volkswagen's alleged policy and practice of discrimination against the Class. *See* Settlement Agreement ¶¶ 3.1–3.7 (Dkt. 133-1 at Page ID## 1637–42). The relief achieved in the Settlement meets or exceeds the injunctive relief sought by Plaintiff at the outset of this action, and presents a significant benefit to Settlement Class members.

7

### 1. Changes to Hiring and Promotion Procedures

One of the primary practices challenged in this litigation has been Volkswagen's allegedly subjective method of filling open positions, which allegedly enabled management to hand-select preferred younger candidates and bypass older workers. The Settlement provides concrete measures to ensure that Settlement Class members are placed on an equal playing field. Volkswagen will now post available positions, leave most positions open for at least ten days, and provide email notification of open positions to Settlement Class members who opt into receiving such notifications. Volkswagen will also develop or maintain a standardized candidate evaluation process, which will require consideration of any specialized skills or expertise former employees developed by virtue of their prior Volkswagen employment. Volkswagen will document all applications for open or newly created positions and promptly inform unsuccessful candidates of their non-selection. Finally, Volkswagen will retain copies of all applications and documents related to any selection decisions for supervisory positions.

### 2. Changes to Discrimination Complaints and Investigation Procedures

The Settlement requires Volkswagen to ensure that employees have multiple means of reporting perceived discrimination, including bypassing an employee's direct supervisor. To this end, Volkswagen agrees that employees may report any discrimination or retaliation to its Human Resources, Legal, or Compliance Departments, to a management level employee at or above the title of the employee's direct supervisor, and/or through an anonymous reporting mechanism. Volkswagen further agrees that all such reports received through these reporting mechanisms will be documented and investigated by a member of HR, Compliance, Legal, and/or outside counsel, and that it will document and retain the resulting findings.

8

### 3. Comprehensive Anti-Discrimination Training and Education

Volkswagen will also take steps to prevent discrimination by training and informing its management employees in Chattanooga—including employees transferred to Chattanooga from Germany—of their obligations and protections under relevant anti-discrimination and anti-retaliation laws and policies. Volkswagen agrees to have a qualified third-party, Martha Boyd, Esq. of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC,[4] create and present a comprehensive anti-discrimination training to all management employees, at least once every twelve months, and to provide documentation verifying that all such employees attended. Volkswagen will also distribute recorded copies of the annual anti-discrimination trainings, copies of the Settlement and the Court's final order, and a written notice of Volkswagen's anti-age-discrimination policies to VWAG personnel responsible for coordinating operations in Chattanooga. The Parties will also select a qualified third-party to provide feedback on and recommend improvements to Volkswagen's anti-discrimination and anti-retaliation policies.

Additionally, Volkswagen will prominently post a message from the Director of HR informing employees of this Settlement, its commitment to anti-discrimination and anti-retaliation policies, and the available means to report perceived violations of these policies. Volkswagen will prominently post its anti-discrimination and anti-retaliation policies and information about how to report violations of such policies, as well as the employees' rights to be free from retaliation for doing so. The Director of HR will send biannual emails reminding all employees of their rights and responsibilities under relevant anti-discrimination and anti-retaliation laws and policies and

---

[4] In the event that Martha Boyd, Esq. is not available to serve in this capacity, Volkswagen shall retain another independent consultant mutually agreed upon by the Parties, or in the absence of mutual agreement, with the assistance of a mediator pursuant to the alternative dispute resolution procedures provided for in the Settlement Agreement.

9

the available means of reporting perceived violations.

### 4. Safeguards Against Future Discrimination

The Settlement will protect Settlement Class members from discriminatory adverse employment actions by requiring the use of appropriate progressive disciplinary procedures; further, Volkswagen must document all investigations and decisions related to any formal discipline, demotions, involuntary or Company-requested transfers, position eliminations, Company-initiated separations, and terminations. In addition, Legal and/or Compliance will be required to review and sign off on all terminations.

### 5. Management Training Program Reforms

Plaintiffs allege that Volkswagen has shut out older workers from its management training programs, such as the MDP, thwarting their career development and advancement. Under the Settlement, Volkswagen will ensure that eligible employees have the opportunity to apply and be evaluated for participation in such programs on an equal basis, regardless of age. It will implement or maintain an open application process, allowing all employees of eligible rank to seek available slots. Volkswagen will notify all employees of this open application process and provide instructions on how to apply. Volkswagen will assess applicants using a standardized and documented evaluation and consider them for selection on an equal basis alongside candidates identified through any other means. Finally, Volkswagen will retain copies of all applications and a record of its selection decisions, as well as promptly inform any unsuccessful candidates of their non-selection.

### B. Release Limited to Claims for Class-Based Injunctive Relief

The Settlement's release provisions are limited to claims for class-wide injunctive relief (the type of class-based or company-oriented programmatic injunctive relief realized through the Settlement) arising from or relating to the factual predicate of this action. Settlement Agreement

10

¶ 1.30 (Dkt. 133-1 at Page ID## 17–18). Importantly, the Settlement expressly does **not** release or bar any Settlement Class member's individualized claims for damages, reinstatement, or other forms of individualized injunctive relief related to an individual's particular circumstances of employment. *Id*. The Settlement is programmatic in nature, and leaves Settlement Class members free to seek individualized remedies for prior discriminatory acts.

### C.    Consideration for Attorneys' Fees and Costs

To date, Plaintiffs' counsel has accrued more than $2 million in fees and costs in connection with the claims in this action. These amounts will only continue to increase in connection with the final approval hearing and over the term of the Settlement. Pursuant to the Settlement, Volkswagen agrees to resolve Plaintiffs' and the Settlement Class' claims for attorney's fees and costs by making a payment in the amount of $995,000, subject to the review and approval of the Court. Settlement Agreement ¶ 5.1 (Dkt. 133-1 at Page ID# 1643). Settlement Class members do not waive or release claims for attorneys' fees and costs in connection with non-released claims, such as claims for individualized relief. Notably, the costs of settlement administration will come out of Counsel's fee and cost award. *Id*. ¶ 7.1.3 (Dkt. 133-1 at Page ID# 1644).

## III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE STATE LAW SETTLEMENT UNDER RULE 23(e)

### A.    The Law Favors Class Action Settlements

"[I]t is . . . well established that public policy strongly favors settlement of disputes without litigation. Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit." *Robinson v. Shelby County Bd. of Ed*., 566 F.3d 642, 648 (6th Cir. 2009) (citations omitted)); *see also UAW et al. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting there is a "federal policy of favoring settlement of class actions."); *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007) ("Public policy strongly favors

11

settlement of disputes without litigation . . . [s]ettlement agreements should therefore be upheld whenever equitable and policy considerations so permit.").

## B. <u>The Settlement is the Product of Non-Collusive Negotiations and is Fair, Reasonable, and Adequate</u>

"The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable." *In re: Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 11669877, at \*3 (E.D. Tenn. Apr. 30, 2014). When determining whether a class action settlement is fair, adequate, and reasonable, the Sixth Circuit has held that the Court may consider the following factors:

> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (citations omitted). "The district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–1206 (6th Cir. 1992).

## 1. The Settlement is the Product of Well-Informed, Arm's-Length Negotiations with No Hint of Collusion

"When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair." *In re: Skelaxin*, 2014 WL 11669877 at \*3 (citation omitted). The fact that "settlement negotiations were conducted at arm's-length by adversarial parties and experienced counsel . . . is indicative of fairness, reasonableness, and adequacy." *Id*. That the negotiations were overseen by an experienced mediator only solidifies the presumption. *E.g.*, *Gokare v. Fed. Express Corp.*, No. 2:11-CV-2131, 2013 WL 12094870, at \*3 (W.D. Tenn. Nov. 22, 2013) ("The participation of an independent mediator in the settlement negotiations virtually

12

assures that the negotiations were conducted at arm's length and without collusion between the parties.").

Here, the Settlement is the product of arms' length negotiation and therefore merits approval. The protracted negotiations were conducted after a period of intense litigation activity and were informed by Class Counsel's own extensive investigation and discovery produced in advance of mediation. Sharp Decl. ¶¶ 17, 27–28. After a full-day session overseen by experienced mediator Michael Russell, the Parties reached an agreement on the principal terms of class-wide programmatic relief. *Id*. ¶ 18. Over the next several months, including two more full-day sessions with Mr. Russell, the Parties ironed out the remaining material terms of the agreement. *Id.* ¶¶ 19– 22. There is no suggestion of collusion. Rather, Plaintiffs and Counsel acted as zealous advocates for the interests of the Settlement Class. *Id.* ¶¶ 5, 28. Accordingly, this factor supports granting final approval. *See, e.g.*, *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *4 (E.D. Mich. Dec. 10, 2018) (granting final approval where the "settlement was negotiated by adversarial parties and experienced counsel, with the help and oversight of mediator" and "appear[ed] to be the product of serious, informed, non-collusive negotiation"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-4, 2015 WL 13650515, at *2 (E.D. Tenn. Jan. 16, 2015) (The "presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion . . . is appropriate here and in any event the undisputed evidence shows that the settlement was negotiated in good faith and without collusion."); *Gokare*, 2013 WL 12094870 at *3 (granting final approval where no offered evidence contradicted the presumption of counsel's integrity and the "absence of fraud or collusion in negotiating the settlement").

## 2.   Neither Side Can Be Guaranteed Ultimate Success on the Merits

Although Plaintiffs are confident in their case, success is not guaranteed. Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y 1969); *see also, e.g., New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (uncertainty of prevailing at trial weighs in favor of settlement).

The factual and legal issues in this case are complex. Volkswagen vehemently denies Plaintiffs' allegations regarding the Pact for the Future or that it treated older workers unlawfully in any way. Further, Volkswagen has stipulated to class certification for settlement purposes only and would vigorously oppose certification if this matter were litigated. Even if the Court ultimately ruled in Plaintiffs' favor regarding class certification, Volkswagen could appeal any such ruling to the Sixth Circuit, potentially delaying any final disposition of the case on the merits for years. A settlement at this juncture avoids the risks of increased costs and delay inherent in continued litigation, as well as the uncertainty of successfully certifying the class, defending motions for summary judgment, trying the claims, and defending a verdict or bringing an appeal.

The Settlement guarantees that Volkswagen will implement and maintain business practices in Chattanooga that will directly and immediately benefit the Settlement Class. Even if Plaintiffs were ultimately successful at trial, there is no assurance that the Court would grant more substantial class-wide injunctive relief than that already secured by the Settlement.[5]

---

[5] *Cf., e.g.*, *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 262–63 (4th Cir. 1976) (affirming order to the extent it required a company that discriminated while selecting supervisors to prepare written job descriptions and objective criteria for appointments, but rejecting the order to the extent it required preferential hiring); *Wells v. Meyer's Bakery*, 561 F.2d 1268, 1273 (8th Cir. 1977) (noting that the district court did not grant any injunctive relief remedying defendant's discriminatory transfer and promotion practices and ordering the district court, on remand, to require defendant to post vacancies in an area accessible to all employees).

14

Not only does the Settlement secure the substantial relief for the Settlement Class, but it requires Settlement Class members to give up very little. *See Does 1-2*, 925 F.3d at 895 ("[C]ourts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive."). The Settlement only releases claims for class-based injunctive relief, in exchange for comprehensive programmatic measures, while preserving Settlement Class members' ability to bring claims for monetary or individualized injunctive relief. Hence, this factor strongly supports approval. *See Harbin v. Emergency Coverage Corp.*, No. 3:16-CV-125, 2018 WL 3284476, at *3 (E.D. Tenn. Apr. 16, 2018), *adopted*, 2018 WL 2266515 (granting approval where the parties explained that they analyzed the likelihood of obtaining a greater recovery through litigation); *In re Skelaxin*, 2015 WL 13650515 at *3 ("Weighing the risk and uncertainty of litigation against the Settlement benefits tilts the scale toward approval."); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692 at *2 (E.D. Tenn. June 15, 2012) ("[W]eighing the amount and form of the relief offered in the settlements against plaintiffs' likelihood of success on the merits preponderates in favor of the fairness of the proposed settlements.").

### 3. The Litigation is Complex and Would Otherwise Take Years, and Significant Resources, to Litigate

Courts also consider "the complexity, expense and likely duration of the litigation." *UAW,* 497 F.3d 615 at 631 (6th Cir. 2007). This case is particularly complex, as it combines a Rule 23 class action with an ADEA collective action and involves complex factual and legal issues. *See Does 1-2*, 925 F.3d at 898 (upholding finding that case "presents complex legal issues because it combines a Rule 23 class action with a FLSA collective action").

Further, this litigation is likely to be risky, protracted, and expensive. *See, e.g.*, *Se. Milk*, 2012 WL 2236692 at *3 ("Most class actions are inherently complex and settlement avoids the

15

costs, delays, and multitude of other problems associated with them." (citations omitted)). The complexity here has been further enhanced by the novel issues of arbitrability that have been aggressively litigated by the Parties. *See id.* (The case's "complexity was enhanced by somewhat novel factual and legal issues which have been hotly contested and aggressively litigated by all parties."). Moreover, discovery in this action will be particularly expensive, as it will likely require translating German language documents and deposing individuals residing in Germany.

Therefore, the Settlement is in the best interest of the Settlement Class because it avoids "the possible difficulties Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and the assured delay in recovery due to the appellate process." *Id.*; *Harbin*, 2018 WL 3284476 at *3 (granting approval where the parties explained that they analyzed the "risks and expense involved in pursuing the litigation to its conclusion[]"); *In re Skelaxin*, 2015 WL 13650515 at *3 ("Avoiding these unnecessary expenditures of time and resources is beneficial to all the parties and the Court. This Settlement therefore ensures a benefit without further delay and without further expense.").

### 4. The Amount of Discovery Completed Favors Approval

This factor also weighs in favor of approval, as the Parties "exchanged sufficient information to gauge class size, Defendant[s]' exposure, and the ability to reach class members[.]" *See Bowman*, 2018 WL 6445389 at *4. "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019).

Both Parties possess the information needed to assess their respective positions. They fleshed out their positions in extensive motion practice. They also engaged in informal discovery

prior to mediation, during which Volkswagen provided Class Counsel with significant information necessary to evaluate the Settlement Class' claims, including information concerning the Pact and its Human Resources policies. Class Counsel has also performed a thorough investigation, including extensive interviews with the Plaintiffs and other current and former Volkswagen employees, analyzing documents, investigating the viability of class action treatment, and assessing potential class-wide injunctive relief. *See Mitchell v. Indep. Home Care, Inc.*, No. 2:17-CV-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019), *adopted*, 2019 WL 1125760. As a result, Plaintiffs' counsel were in a position to accurately assess the merits of the claims and the value of the Settlement. *See Barnes*, 2019 WL 1614822 at *3 (approving settlement where parties engaged in informal discovery and "Class Counsel conducted extensive investigations into the facts"); *Mitchell*, 2019 WL 696941 at *4 (approving settlement where parties engaged in informal discovery and "Class Plaintiff conducted extensive investigations into the facts"); *Bowman*, 2018 WL 6445389 at *4 ("The parties did not engage in formal discovery[,]" but "had enough information to evaluate their positions for purposes of settlement[]" where "[t]he parties exchanged sufficient information to gauge class size, Defendant's exposure, and the ability to reach class members[.]").

### 5. The Judgment of Experienced Trial Counsel and the Approval of the Class Representatives Favor Approval

"Courts in the Sixth Circuit defer to the informed and reasoned judgment of class counsel and their weighing of the risks and benefits of protracted litigation." *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *10 (W.D. Ky. Aug. 23, 2019) (collecting cases). Here, Class Counsel is very experienced in complex class litigation, particularly in the employment discrimination context, and has been repeatedly recognized for its zealous representation. *See, e.g.*, *Pan v. Qualcomm Inc.*, No. 16-CV-01885, 2017 WL 3252212, at *9 (S.D.

17

Cal. July 31, 2017) ("[T]he presumption of reasonableness is especially warranted based on [Sanford Heisler Sharp's] expertise in complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements."); *Smith v. Merck & Co.*, No. 13-2970, 2019 WL 3281609, at *5 (D.N.J. July 19, 2019).[6] Moreover, Plaintiffs Manlove, Carter, and Orr have each reviewed and approved the Settlement Agreement as providing robust, class-wide relief tailored to Volkswagen's alleged practices. Sharp Decl. ¶¶ 28, 40. Given the experience and high legal standing of both Parties' attorneys, counsel's endorsement of the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class weighs significantly in favor of the Settlement. *See Skelaxin*, 2015 WL 13650515 at *3 (The fact that experienced counsel negotiated the settlement at arm's length "weighs in favor of fully approving the Settlement."); *Gokare*, 2013 WL 12094870 at *6 ("Class Counsel and the Class Representatives believe that the Settlement Agreement is in the best interests of the Settlement Class and warrants approval. Under governing law, their judgment is a factor that weighs strongly in favor of approval of the Settlement." (citation omitted)).

### 6. The Reaction of the Settlement Class Members

The reaction of the class members is a critical factor in a final fairness assessment. *See, e.g.*, *Se. Milk*, 2012 WL 2236692 at *3 ("The lack of objections by class members in relation to the size of the class also highlights the fairness of the settlements to unnamed class members and supports approval of the settlements."). The class members have overwhelmingly signaled their support for the Settlement in this case. No Class Members have filed a valid objection or raised any

---

[6] *See also, e.g.*, *Wellens v. Sankyo*, No. C 13-00581, 2016 WL 8115715, at *2 (N.D. Cal. Feb. 11, 2016); *Zolkos v. Scriptfleet, Inc.*, No. 12 CIV. 8230, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015); *Wooten v. Smith & Nephew, Inc.*, No. 2:06-cv-02571, 2009 U.S. Dist. LEXIS 130317, at *4 (W.D. Tenn. Nov. 25, 2009); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *10, 19 (S.D.N.Y. Nov. 30, 2010).

18

concerns regarding the terms of the Settlement. None have asserted that the Settlement, or any of its provisions, should not be approved. None have suggested that the relief created by the Settlement is insufficient in any manner or that the Settlement fails to adequately protect the Class.

This is no surprise. The Settlement provides the Settlement Class with substantial injunctive relief that meets or exceeds the injunctive relief sought by Plaintiff at the outset of this action and presents a significant benefit to Settlement Class members, all without waiving any class member's rights to pursue individual claims for monetary or injunctive relief. Sharp Decl. ¶¶ 28, 38. Absent the Settlement, Plaintiffs would face protracted and costly litigation fraught with risks and uncertainties. *Id*. ¶ 7.

The Class' lack of objection indicates uniform support for the Settlement and is considered a powerful indication of the Settlement's fairness. *See, e.g., In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 488–98 (E.D. Mich. 2008) ("If only a small number of opt outs or objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citation omitted). "[T]he overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the [Settlement]." *Se. Milk* 2012 WL 2236692 at *3 (noting "there was only one objection" to the settlement); *see also Skelaxin*, 2015 WL 13650515 at *3 ("The lack of objections indicates that members of the Settlement Class support the Settlement.").

a.  The Calvert "Objection"

Of the 771 Class Members, only one has filed a self-styled "objection." This document is not a true objection under the meaning of Rule 23(e)(5) and the Settlement Agreement. Instead, the Class Member, Thomas Calvert, indicates merely that he is satisfied with his employment at Volkswagen, has not suffered past discrimination, and does not wish to participate in the Settlement. *See* Dkt. 135-

19

1. In actuality, the "objection" is an attempt to opt-out of the Class. But the very concept of a Rule 23(b)(2) class action is that class-wide injunctive measures are implemented to the benefit of all Class Members going forward; there is no way to exclude particular individuals from programmatic changes to company policies and procedures and nothing to opt-out of. Mr. Calvert, the so-called "objector," has not indicated his dissatisfaction with the Settlement or suggested that its terms or provisions are unfair, unreasonable, or inadequate or will result in harm to Class Members. If Mr. Calvert chooses, for example, not to participate in improved promotion and complaint processes by refraining from seeking a promotion or filing a complaint, he is presumably free to do so.

Upholding Mr. Calvert's "objection" would be giving veto power over a Rule 23(b)(2) injunctive settlement to a single individual who mistakenly seeks to opt out of the Settlement. It would mean that a Rule 23(b)(2) claim for class-wide injunctive relief cannot be settled when a class member claims not to have been personally affected by the practices at issue. This is not the law.

### 7. The Public Interest Favors Settlement

"The public has a strong interest in settling disputes without litigation, especially class action litigation where the parties will expend substantial resources that could otherwise be conserved through settlement." *Skelaxin*, 2015 WL 13650515 at *3. The Settlement here will serve the public interest by freeing the valuable judicial resources of this Court. *See Se. Milk*, 2012 WL 2236692 at *4 ("Generally speaking, there is a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve."). Therefore, the Settlement serves the public interest by resolving what will otherwise likely be a long and protracted litigation. *See id*. Moreover, by bringing meaningful change and increased transparency to Volkswagen, the settlement advances the public interest in remediating alleged discriminatory practices. *See Todd v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 WL 3981593, at *5 (M.D. Tenn. Aug. 22, 2008)

("There are strong and important public interests in . . . ensuring that private companies comply with applicable federal laws.").

### C. The Settlement Provides Fair and Equitable Treatment to the Settlement Class Members

The Sixth Circuit also considers "whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (citation omitted). Although the individual Plaintiffs have separately settled their individual arbitration claims against Volkswagen, this does not constitute preferential treatment because Class Members who may possess such claims remain free to pursue them and to obtain full relief on the merits. Not only does the Settlement preserve each absent Settlement Class member's ability to bring claims for individual relief, but it grants the entire Settlement Class the same, highly-substantial programmatic relief. Therefore, the Settlement treats the Settlement Class Members fairly and equitably.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT UNDER § 216(b)

Although a 29 U.S.C. § 216(b) collective action settlement does not involve the rights of absent class members and is not subject to Rule 23(e),[7] the Court still may review the settlement to ensure that it is fair and reasonable. *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). The standard for approval of a § 216(b) collective action settlement is lower than for a Rule 23 settlement, as it does not implicate the same due process concerns. *E.g.*, *Grewe v. Cobalt Mortg., Inc.*, No. C16-0577, 2016 WL 4014114, at *4 (W.D. Wash. July 27, 2016). A collective action settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 1:11-

---

[7] Here, only those class members who opt into the action and sign OWBPA-compliant releases will be bound by the Settlement of the ADEA injunctive claims. *See* 29 U.S.C. §§ 216(b), 626(f).

21

CV-00088, 2014 WL 12654902, at *1 (S.D. Ohio Feb. 19, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-CV-400, 2012 WL 6707008, at *3 (E.D. Tenn. Dec. 26, 2012). Because the Settlement meets the stricter Rule 23(e) standard, as discussed above, it also warrants approval under § 216(b). The Settlement is a fair and reasonable compromise of contested claims, as the Parties plainly have *bona fide* disputes over, *inter alia*, (i) whether Volkswagen's Pact was discriminatory in nature and effect; (ii) whether Volkswagen systematically implemented the Pact in Chattanooga in order to take adverse actions against older workers; (iii) absent settlement, whether maintenance of a collective action under the stage-two decertification standard would be appropriate; and (iv) what forms of injunctive relief, if any, should be issued. The Parties have vigorously contested these issues and would continue to do so absent a settlement. The relief provided to the Class is highly substantial as set forth above. Moreover, unlike many collective action cases, each collective action member is also a Rule 23 Settlement Class member and has received (i) a notice which meets the more stringent requirements of Rule 23 and due process; and (ii) an opportunity to weigh in on the Settlement by objecting and by appearing at the final fairness hearing. No class members have objected to the terms or provisions of the Settlement or filed a notice of intention to appear at the fairness hearing.

## V. THE COURT SHOULD APPROVE ATTORNEYS' FEES AND COSTS IN THE AMOUNT SPECIFIED IN THE SETTLEMENT

The Settlement Agreement and Notice to Class Members provide that, subject to Court approval, Class Counsel will receive "attorneys' fees and costs in the amount of Nine Hundred Ninety-Five Thousand Dollars ($995,000) as a fair and reasonable settlement of Plaintiffs' and Settlement Class Members' claims for attorney's fees, costs, and expenses." *See* Notice (Dkt 133-1 at Page ID# 1663); Settlement Agreement ¶ 5.1 (Dkt. 133-1 at Page ID# 1643). Here, Counsel seeks less than half of the more than $2 million in total fees and expenses accrued to date in the

22

course of its representation of the Class. *See* Sharp Decl. ¶¶ 44-49, Expense Report (Sharp Decl. Ex. 5), Estimate of Costs for Notice Services (Sharp Decl. Ex. 6).

The requested fee is typical in class discrimination litigation and other class settlements and is eminently reasonable in light of the time and resources expended by Class Counsel and the outstanding result achieved. This, in combination with the lack of class member objections, confirms the reasonableness of the fee sought.[8]

### A. The Standard for Awarding Attorneys' Fees to Class Counsel

In considering whether to approve a request for fees to class counsel, an attorney's fee award need only be "reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). Here, there is no question that Class Counsel's request for fees is reasonable.

The standard that courts apply in determining the reasonableness of a fee request depends in large part upon the source from which the fee award will be paid. Where the "money paid to the attorneys comes from a common fund, and is therefore money taken from the class, then the Court must carefully review the award to protect the interests of the absent class members." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). However, where, as here, any "money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary

---

[8] In civil rights cases involving a judgment or settlement providing solely for injunctive relief, counsel are entitled to an award of fees and costs. *See, e.g.*, *Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012) (awarding $725,000 where parties' settlement resulted only in injunctive relief); *see also K.H. v. Sec'y of Dept. of Homeland Security*, No. 15-cv-02740, 2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) (where each class member would receive $1,500 sum and there was no common fund, upholding parties' separate agreement for attorney's fees and costs in the amount of $425,000, which would not reduce the benefits to the class). Otherwise, counsel lacks an incentive to pursue such cases, depriving victims of representation and undermining the public purposes of the relevant statutes.

role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Id.*

Indeed, "fees negotiated and paid separate and apart from the class recovery are entitled to a **presumption of reasonableness**." *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) (citation omitted; emphasis added). "Courts are especially amenable to awarding negotiated attorney's fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class." *Id.*

The context in which the request for fees arises further supports a presumption of reasonableness. *First*, Plaintiffs' request for "attorneys' fees and expenses is separate and apart from the class settlement—which is not a monetary common fund—and will not in any way diminish the class settlement. Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit" Volkswagen. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007). *Second*, "[a]ttorney's fees were not discussed until the material terms of the Settlement had been agreed." *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *5 (W.D. Tenn. Dec. 4, 2015); Sharp Decl. ¶¶ 18–19.[9] *Finally*, "[t]he negotiations took place at arms-length between sophisticated counsel on both sides of the table and under the supervision" of a well-respected mediator. *Bailey*, 2008 WL 553764, at *1; *see* Sharp Decl. ¶¶ 17–28.

---

[9] *See also Manners v. Am. Gen. Life Ins. Co.*, No. CIV.A. 3-98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) ("Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties"); *DeHoyos*, 240 F.R.D. at 322 (noting with approval that "attorneys' fees were not negotiated or discussed until after the agreement was reached between the parties on all other terms of the settlement.")

24

The resolution of fees between the parties through an arms' length negotiation, rather than a contentious fee dispute, is the "ideal" towards which parties should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[I]deally, of course, litigants will settle the amount of a fee."). Taken as a whole, "[t]hese factors indicate a presumption of reasonableness in the request for an award." *DeHoyos*, 240 F.R.D. at 322.

The reasonableness of the fees sought here is apparent even under the heightened *Ramey* factors that courts in the Sixth Circuit employ when determining the amount of "a reasonable award from a common fund: [1] the value of the benefit conferred upon the class; [2] society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; [3] whether the services were undertaken on a contingent fee basis; [4] the value of the services on an hourly basis; [5] the complexity of the litigation; and [6] the professional skill and standing of all counsel." *Manners*, 1999 WL 33581944, at *30 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

### 1. Counsel Has Rendered a "Remarkable" Benefit to the Class

"'The most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Here, Plaintiffs succeeded in securing nearly all aspects of class-wide injunctive relief sought in this litigation. This includes substantial changes to Volkswagen's policies and practices specifically challenged as discriminatory in this action. Indeed, Plaintiff's proposed order in support of the motion for class-wide preliminary injunction (Sharp Decl. Ex. 4) sought the following relief:

    a) Open the MDP program to all workers on an equal basis regardless of age, and allow workers to specifically seek and apply for admission to the MDP;

    b) Post all open positions internally and allow workers to apply for open positions without regard to their age;

c) Document all adverse actions (including terminations, demotions, transfers, formal discipline, denial of promotion, shift changes, and denial of entry into the MDP) taken against workers over 50 years of age. Volkswagen's documentation must include the reasons for the action and whether similar actions have been taken against employees under the age of 50; be signed off by a Legal Department or Human Resources representative; and, be provided to the employee at issue.

The parties' negotiated Settlement Agreement achieved all of this relief and more through programmatic changes to Volkswagen's corporate policies and practices. The court in *DeHoyos* recognized the exceptional nature of this type of achievement, noting that "one expert has deemed a class action settlement negotiated with a major corporation which results in substantial policy changes to be a 'remarkable' achievement." 240 F.R.D. at 333.

Without Class Counsel's vigorous prosecution of these claims, this sort of far-reaching change to corporate policy is unlikely to have ever been achieved. This is especially so given Volkswagen's position on mandatory individual arbitration; the reality is that many Class Members would likely have never pursued individual claims.

It is also significant that no class member has objected to the requested fee even after being provided with Notice. This is considered a strong indication that the fee is reasonable. *See, e.g., In re Se. Milk Antitrust Litig*., No. 2:07-CV-208, 2012 WL 12875983, at *3 (E.D. Tenn. July 11, 2012); *Lowther v. AK Steel Corp*., No. 1:11-CV-877, 2012 WL 6676131, at *4 (S.D. Ohio Dec. 21, 2012) ("The lack of objections is strong evidence of the acceptability of a fee request.").[10]

## 2. Society Has a Stake in Encouraging Private Attorneys to Undertake Important Discrimination Litigation

---

[10] *See also, e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."); *McGee v. Cont'l Tire N. Am., Inc.*, No. CIV. 06-6234(GEB), 2009 WL 539893, at *14 (D.N.J. Mar. 4, 2009) (absence of substantial objections to attorney's fee "strongly supports approval" of such fee); *In re Xcel Energy Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005) (lack of objection to fee request "can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel").

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003). Cases seeking to eradicate discrimination and vindicate civil rights, in particular, are encouraged "because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); *see also Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (Brennan, W. concurring); *DeHoyos*, 240 F.R.D. at 329 ("While many categories of lawsuits are valued by our society, actions resulting in the erosion of discrimination and the preservation of civil rights are especially significant."). Such important "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Hensley*, 461 U.S. at 445 (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976)).

Class counsel prosecuted this action under state and federal statutes that expressly provide for attorney's fees to prevailing plaintiffs. T.C.A. § 4-21-311(b); 29 U.S.C. § 216(b); *see Salinas v. U.S. Xpress Enterprises, Inc*., No. 1:13-CV-00245, 2018 WL 1477127, at \*8 (E.D. Tenn. Mar. 8, 2018), *adopted*, 2018 WL 1475610 ("Awards of attorneys fees under the FLSA are mandatory, though the Court has discretion over the amount of fees due the attorneys").

Defendants have agreed to implement changes to the very policies and practices challenged as discriminatory in this litigation. "[F]ailing to fully compensate class counsel" for its excellent work, the risks undertaken, the resources expended, and the result achieved, "would undermine society's interest in the private litigation of [age discrimination] cases." *Se. Milk*, 2012 WL 12875983, at \*23. *See also In re Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055, 1996

27

WL 780512, at *17 (E.D. Mich. Dec. 20, 1996); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *14 (E.D. Mich. May 20, 2013).

### 3. Class Counsel's Services Were Undertaken on a Contingency Fee Basis

"This factor accounts for the substantial risk an attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010). In the class action context, "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011); *cf. Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) (holding, in the statutory fee-shifting context, that contingent-fee representation may warrant higher hourly rates).

Class Counsel accepted this matter on a wholly contingent basis and have received no compensation to date. Sanford Heisler Sharp has worked thousands of hours with the risk of getting nothing in return, all of which "would have been for naught if [Plaintiffs] lost at any stage of the litigation." *Lonardo*, 706 F. Supp. 2d at 796; *see also Continental Illinois*, 962 F.2d 566, 569 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("[F]ailure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case"). In general, when counsel spends "considerable time on [a] case at the risk of receiving no compensation," it is entitled to a fee that reflects the degree of risk assumed. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-MD-01998, 2010 WL 3341200, at *11 (W.D. Ky. Aug. 23, 2010).

### 4. The Lodestar Value of Class Counsel's Work Far Exceeds the Requested Fee

Counsel's requested fee and cost award of $995,000 "is more than reasonable under the Lodestar analysis, particularly since in class action settlements, the Court may enhance the lodestar

28

with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2019 WL 3889621, at *14 (S.D. Ohio Aug. 16, 2019), *adopted*, 2019 WL 3980570.[11]

Sanford Heisler Sharp has devoted over 4,000 hours to the investigation, prosecution, and successful resolution of this matter. Sharp Decl. ¶¶ 41–44. Since their retention, Class Counsel's work has included, *inter alia*: investigating the allegations against the Defendants; participating with the EEOC in its investigation into the claims; conducting interviews with class members and potential witnesses; researching the legal issues implicated in this case relating to liability, arbitrability, jurisdiction, injunctive relief, and class and collective certification; drafting pleadings and motion papers, including successfully resisting Defendants' attempts to remove this action to individual arbitration, successfully defending against two separate motions to dismiss, filing multiple rounds of briefing regarding Plaintiffs' request for a preliminary injunction, successfully defending against Defendants' motion for judgment on the pleadings, and obtaining conditional certification of the ADEA collective action; negotiating discovery and an ESI protocol; participating in a months'-long mediation and settlement negotiation process; obtaining preliminary approval of the Settlement; overseeing the administration of Notice and claims administration; communicating with Class Members about the Settlement; and moving for final approval of the Settlement. Sharp Decl. ¶ 42.

---

[11] In fact, Plaintiffs maintain that, in a litigated fee petition, Counsel would be entitled to a positive multiplier over its actual lodestar. "Lodestar multipliers may be applied to account for the risk that counsel assumes in undertaking a case, the quality of the work product, and the public benefit achieved." *Johnson,* 2015 WL 12001269, at *12 (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). For example, the *Johnson* court approved a fee request resulting in a 1.7 multiplier and a blended hourly rate of $964.65, in addition to reimbursement of out-of-pocket expenses. *Id*. at *13.

29

Based on this extensive work, Sanford Heisler Sharp's lodestar to date amounts to $2,080,134.75 and its out-of-pocket costs to $13,516.99. Sharp Decl. ¶¶ 44, 48, Expense Report (Sharp Decl. Ex. 5). These amounts will only increase through the final approval and administration process; Class Counsel is also responsible for paying an estimated $9,686.00 in settlement administration expenses out of its fee and cost award. Sharp Decl. ¶¶ 47, 49, Estimate of Costs for Notice Services (Sharp Decl. Ex. 6). It is more than reasonable for the parties to negotiate a fee and cost settlement of less than half of this amount and for the Court to approve the requested award.

### 5. The Complexity of the Litigation Supports the Requested Fee

Class-based discrimination litigation is typically complex and is often litigated for years. Here, this action involves numerous complicated factual and legal issues such as: whether Volkswagen's mandatory arbitration agreement allowed for class-wide claims seeking injunctive relief (an issue that required multiple rounds of briefing before both the court and arbitrator over the course of nearly four months); whether the Court had jurisdiction over foreign parent VWAG; whether service on the registered agent of a wholly-owned subsidiary effects service on a foreign corporation; whether foreign parent VWAG exerted control over its US subsidiaries such that it operated as Class Members' employer; whether the Pact for the Future was implemented in Chattanooga, Tennessee; and the proper method by which to remedy Defendants' alleged practices and conduct. Further issues surrounding the international location of VWAG, such as document translations, added to the complexity of the case.

Moreover, prosecuting a dual ADEA collective action under § 216(b) and Rule 23 class action, while simultaneously arbitrating similar issues potentially bearing on the class and collective litigation, would have heightened the difficulty and risk of the litigation. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8,

30

2010). Suffice to say that the difficulties and complexities of this case went far beyond those found in the majority of employment discrimination cases. Settling both branches of this lawsuit achieved a tangible benefit for the class while preserving each Class Members' individual discrimination claims and right to pursue monetary damages, and avoided continued litigation of issues that remain unsettled and were certain to be appealed. By avoiding the uncertainties presented in this unusually complex case, Class Counsel was able to obtain results for the class more quickly and surely than if the matter had been litigated to final resolution.

### 6. The Attorneys in this Action Have a High Standing at the Bar and Have Shown Great Skill and Resourcefulness in Bringing the Case to this Successful Conclusion

Class Counsel is highly skilled and experienced in class employment discrimination matters and has achieved a number of exceptional results on behalf of workers throughout the country over the last several years. *See* Sharp Decl. ¶ 4, Class Counsel's Firm Resume (Sharp Decl. Ex. 1). Class Counsel's firm has served as counsel in approximately 50 class and collective actions nationwide. *Id*.

Since its formation in 2004, Sanford Heisler Sharp has been significantly involved in civil rights and employment class action litigation, and is recognized as a preeminent nationwide plaintiffs' firm specializing in complex class litigation. *See, e.g.*, *Pan* 2017 WL 3252212, at *12 (in approving $19.5 million class settlement with programmatic relief, the court commented: "Counsel has expended tremendous effort in resolving this case favorably, thoroughly, and expeditiously. This, to date, includes over 3,084 attorney and staff hours in pursuing the proposed settlement, and included multiple rounds of pre-suit negotiations, information exchanges, and mediations.").[12]

---

[12] *See also, e.g.*, *Zolkos v. Scriptfleet, Inc*., No. 12 CIV. 8230, 2014 WL 7011819, at *5 (N.D. Ill. Dec. 12, 2014) ("Sanford Heisler is very experienced in complex class and collective litigation . .

Using this skill and knowledge, Class Counsel have devoted thousands of attorney and staff hours on this litigation. In conjunction with Volkswagen's counsel, Class Counsel negotiated a highly favorable settlement through arm's length discussions during a private mediation conducted by Mr. Russell. Class Counsel also prepared relevant settlement documents and worked to resolve all disagreements over the settlement and corresponding settlement papers. Accordingly, this factor weighs heavily in favor of the requested fee. *See, e.g., Dallas*, 2013 WL 2197624, at *14; *Se. Milk Antitrust Litig.*, 2012 WL 12875983, at *4.

---

In short, the negotiated fee and cost award of $995,000 represents a fair and reasonable compromise in light of Class Counsel's extensive work and efforts on the case, the benefits achieved for the class, and other factors. Through the Notice and objection process, the Class Members have had an opportunity to vote on the Settlement and have spoken in unison: compensating Class Counsel for its time, efforts, and expenditures on behalf of the Class is appropriate and in no way undermines their interests. Reducing the negotiated amount would only result in a windfall to Defendants while failing to adequately compensate Class Counsel. This would act as an obstacle to enforcement of employment protections such as the ADEA and THRA by disincentivizing qualified counsel to pursue similar matters.

---

. and has been repeatedly recognized for its skilled and effective representation."); *Velez*, 2010 WL 4877852, at *22 ("Plaintiffs' lawyers are obviously entitled to significant compensation (including a substantial bonus over and above their hourly rates). They have well and truly earned it; they prepared and tried a brilliant case against a dogged opponent."); *In re Novartis Wage & Hour Litig.*, No. 1:06-md-1794 (S.D.N.Y. May 31, 2012) (ground-breaking $99 million settlement on behalf of employees in a case against Novartis); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *1 (S.D.N.Y. Aug. 6, 2010) (recognizing SHS for having "an established record of competent and successful prosecution of large . . . class actions").

32

## CONCLUSION

The Settlement was achieved through extensive arm's-length negotiations overseen by a highly qualified mediator and represents a reasonable and fair resolution of this complex litigation. Volkswagen will implement or maintain corporate policies and practices to reduce the structural potential for age discrimination and to expeditiously address it whenever it might occur. Thus, the Court should grant final approval of the Parties' Settlement and associated relief.

Dated: April 15, 2020                               Respectfully submitted,

                                                        s/Kevin Sharp

                                                        Kevin H. Sharp (TN BPR 016287)
Leigh Anne St. Charles (TN BPR 036945)
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

Andrew Melzer (pro hac vice)
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone:(646) 402-5657
Facsimile: (646) 402-5651
amelzer@sanfordheisler.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on 15th day of April 2020 a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this electronic filing shall be sent via the CM/ECF system to the following individuals:

Charles B. Lee
Bradford G. Harvey
Megan B. Welton
Jessica Malloy-Thorpe
MILLER & MARTIN, PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289

Michael W. Johnston
Rebecca Cole Moore
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309

*Counsel for Defendants Volkswagen Aktiengesellschaft, Volkswagen Group of America, Inc., and Volkswagen Group of America Chattanooga Operations, LLC*

William B. Monahan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Julia M. Jordan
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, DC 20006

*Counsel for Defendant Volkswagen Aktiengesellschaft*

*/s/ Kevin H Sharp*_____
Kevin H. Sharp
SANFORD HEISLER SHARP, LLP
611 Commerce St., Suite 3100
Nashville, TN 37203
(615) 434-7001
ksharp@sanfordhesiler.com

34